CLEVELAND SURGI–CENTER, INC.; Planned Parenthood Association of Cincinnati; Akron Center for Reproductive Health, Inc.; Women's Pavillion, Inc., d/b/a Center for Choice II; Women's Med + Center, Ltd., d/b/a Women's Med + Center of Dayton; Lee I. Rubinstein, M.D., individually and on behalf of their patients, Plaintiffs–Appellants,

v.

Stephanie Tubbs JONES, in her official capacity as Cuyahoga County Prosecutor, and John H. Gibbon, in his official capacity as Prosecuting Attorney for the City of Cleveland Heights, and as representatives of the class of public officials empowered to enforce the provisions of Ohio Rev.Code § 2919.12, Defendants–Appellees.

No. 92–4371.

United States Court of Appeals, Sixth Circuit.

Argued May 3, 1993.

Decided Aug. 13, 1993.

Kim F. Bixenstine, Jones, Day, Reavis & Pogue, Cleveland, OH, Roger K. Evans, Celeste Lacy Davis (argued and briefed), Planned Parenthood Federation of America, Inc., New York City; and Alphonse A. Gerhardstein, Laufman, Rauh & Gerhardstein, Cincinnati, OH, for plaintiffs-appellants.

Richard A. Goulder (argued and briefed), Office of the Pros. Atty.; John H. Gibbon (argued), Walter, Haverfield, Buescher & Chockley, Cleveland, OH; and Laure A. Wagner (briefed), Office of the Director of Law, Cleveland Heights, OH, for defendants-appellees.

Before: KENNEDY and SILER, Circuit Judges; and CONTIE, Senior Circuit Judge.

KENNEDY, Circuit Judge.

Plaintiffs appeal the dismissal of their claims challenging the constitutionality of the state of Ohio's judicial bypass system for minors seeking an abortion. On June 17, 1991, five institutional abortion providers and a physician filed a complaint in the United States District Court for the Northern District of Ohio, seeking (1) a declaration that Ohio's parental notification legislation, codified under Ohio Rev.Code Ann. §§ 2151.85, 2919.12, and 2505.073 ("the statute"), is unconstitutional as implemented, and (2) an injunction against future enforcement. Defendants in the action are Stephanie Tubbs Jones, Cuyahoga County Prosecutor, and John H. Gibbon, Prosecutor for the City of

Cleveland Heights,[1] in their official capacities and as representatives of the class of public officials empowered to enforce the provisions of Ohio Rev.Code § 2919.12, which makes the performance of an abortion on a minor without parental notice or judicial authorization sanctionable.[2]

Defendants filed a motion to dismiss on the grounds that plaintiffs lacked standing to bring the action.[3] The District Court granted the motion to dismiss on August 27, 1992 on the grounds that plaintiffs did not allege any intention to violate the statute, and therefore, failed to demonstrate that the implementation of the statute harmed them in any way. After the District Court denied their motion to reconsider, plaintiffs timely appealed. We affirm also concluding plaintiffs lack standing but for reasons other than those stated by the District Court.

## I.

Under Ohio's statute governing the regulation of minor access to abortions, unemancipated, unmarried pregnant minors are required to first notify a parent or guardian before having an abortion. If the minor wishes to have the abortion without the required notification, she may request the issuance of a judicial waiver of the notification requirement. The waiver authorizes her to consent to the performance of an abortion. Ohio Rev.Code Ann. § 2151.85. To obtain a judicial bypass, the juvenile court must find by clear and convincing evidence that the minor is mature enough to make the decision on her own, or that notifying a parent is not in her best interests. The statute does not define "maturity" or "best interests." Anyone who performs an abortion on a minor who has neither notified a parent nor obtained a waiver of the notification requirement is subject to civil and criminal penalties under Ohio Rev.Code Ann. § 2919.12. The United States Supreme Court upheld the statute in its entirety in a previous facial challenge. *Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) ("*Akron II*"). Plaintiffs argue that the judicial bypass procedure is being implemented in an arbitrary fashion, in violation of pregnant minors' rights to due process through arbitrary decisions of Ohio courts that are not corrected by other appellate courts.

## II.

■ The District Court dismissed the action on the grounds that plaintiffs lacked standing to bring the action. The court stated that if plaintiffs had alleged an intent to violate the statute, which they did not, they would have satisfied Article III's "case-or-controversy" requirement. We do not believe that the standing issue in this case is dependent upon plaintiffs' intent to violate the statute. The United States Supreme Court has held that a physician's potential for criminal liability under similar laws asserted a sufficiently direct threat of personal detriment to confer standing to challenge the *facial* validity of the abortion laws. *See Akron v. Akron Center for Reproductive Health*, 462 U.S. 416, 440 n. 30, 103 S.Ct. 2481, 2497 n. 30, 76 L.Ed.2d 687 (1983) ("*Akron I*"); *Planned Parenthood v. Danforth*,

---

**1.** The original second named defendant was Kim Segebarth, Prosecutor of the City of Cleveland Heights. However, Mr. Segebarth is the Assistant Director of Law for Cleveland Heights, under the direct supervision of the Director of Law, John H. Gibbon. Sometime after the District Court's dismissal of the complaint, Mr. Gibbon was substituted as a defendant in place of Mr. Segebarth.

**2.** Section 2919.12 provides:
(D) Whoever violates this section is guilty of unlawful abortion, a misdemeanor of the first degree. If the offender previously has been convicted of or pleaded guilty to a violation of this section, unlawful abortion is a felony of the fourth degree.

(E) Whoever violates this section is liable to the pregnant woman and her parents, guardian, or custodian for civil compensatory and exemplary damages.
Ohio Rev.Code Ann. § 2919.12(D) and (E). In addition to these penalties, a physician who performs an unlawful abortion may have his or her certificate to practice medicine limited, revoked, or suspended, or may be subject to reprimand or probation. Ohio Rev.Code Ann. § 4731.22.

**3.** Defendant Segebarth also moved to dismiss on the grounds that defendants are not proper defendants. The District Court did not rule on this motion because it dismissed the action on standing grounds.

428 U.S. 52, 62, 96 S.Ct. 2831, 2837, 49 L.Ed.2d 788 (1976); *Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973). We express no opinion on whether a physician's potential criminal liability under an abortion law that has been upheld as facially valid is sufficient to confer standing in an as applied challenge. We hold only that the District Court erred in making plaintiffs' *intent* to violate the statute determinative of their standing to bring the action. However, we conclude that plaintiffs lack standing since, as we determine below, neither we nor the District Court have jurisdiction to hear this action.

As the Supreme Court stated in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982):

> The term 'standing' subsumes a blend of constitutional requirements and prudential considerations.... [A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99[, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66] (1979), and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision,' *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41[, 96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450] (1976). In this manner does Art. III limit the federal judicial power 'to those disputes which confine federal courts to a role consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process.' *Flast v. Cohen*, 392 U.S. 83, 97[, 88 S.Ct. 1942, 1951, 20 L.Ed.2d 947] (1968).

*Id.* 454 U.S. at 471–72, 102 S.Ct. at 757–58 (footnote omitted). In its latest pronouncement on Article III's case-or-controversy requirement, the Supreme Court examined its earlier decisions and organized the standing doctrine into a three-factor test: (1) injury in fact; (2) causation; and (3) redressability.

*Lujan v. Defenders of Wildlife*, —— U.S. ——, ——, 112 S.Ct. 2130, 3136, 119 L.Ed.2d 351 (1992). Similarly, this Court recently discussed the standing doctrine as composed of the same three elements. *See State of Michigan v. United States*, 994 F.2d 1197, 1203 (6th Cir.1993) ((1) "some actual or threatened injury"; (2) "that the injury is fairly trace[able] to the challenged action"; and (3) "that the injury can likely be redressed by a favorable decision." (quoting *Valley Forge Christian College*, 454 U.S. at 472, 102 S.Ct. at 758)). The redressability requirement is unmet here and is determinative of this action. Because of the nature of plaintiffs' as applied challenge, namely that state judges are making wrong factual or discretionary decisions, the alleged injury cannot be redressed and plaintiffs therefore are without standing.

### III.

Plaintiffs claim that the judicial bypass procedure, as implemented, operates to deprive minors of their "constitutional right to choose to have an abortion without parental involvement." They argue that (1) the absence of guidelines on what constitutes "maturity" and "best interest"; (2) the absence of a requirement that factual findings be recorded when bypass petitions are denied; and (3) an abuse of discretion standard of review combine to give juvenile court judges virtually unfettered discretion to deny parental notice waivers. Plaintiffs allege several examples of cases where young women, age 17 or approaching that age, were denied a waiver for reasons that might well be categorized as arbitrary.

24. For example, a nearly 18–year–old minor petitioned the Juvenile Court in Cuyahoga County for a waiver of the notification requirement. (*"Jane Doe II"*.) The Juvenile Court held that this minor was not sufficiently mature for the sole reason that she did not want to discuss her abortion decision with her parents. The Court reasoned that a mature minor would accept the consequences of her actions and disclose the matter to her parents. The Court of Appeals of Cuyahoga County affirmed the Juvenile Court's denial of the waiver.

25. Similarly, the Court of Appeals in Montgomery County in [*"Jane Doe III"*] affirmed a Juvenile Court decision denying the petition of a minor who was nearly 17 years old at the time of the hearing. She was a sophomore in high school with college aspirations, who testified that she could not go to college while raising a baby. She had been raised in foster homes during the preceding three years with little contact with her parents. Relying on [*In re Jane Doe,* 57 Ohio St.3d 135, 566 N.E.2d 1181 (1991) ("]*Jane Doe I* [")], the Court of Appeals, with a dissent, found that the Juvenile Court had not abused its discretion.

26. In April, 1991, the Juvenile Court of Lucas County denied the petition of a minor (*"Jane Doe IV"*) on the grounds that her failure to file a paternity action against the father of her three-month-old son demonstrated a lack of maturity. Jane Doe IV was 17½ years old at the time, and the mother of an infant son. She was attending high school and employed part-time. She resided with her grandmother and paid her own room and board.

27. Also in April, 1991, the Juvenile Court of Lucas County denied a minor's (*"Jane Doe V"*) petition because, the presiding judge stated off the record to Jane Doe V's attorney, she had not had enough "hard knocks." Jane Doe V was 17½ years old, an "A" student active in her high school's activities. She planned to go to college and testified that she would be unable to do so if she had a child at that time.

28. In January[,] 1992, the Juvenile Branch of the Franklin County Domestic Relations Court denied a minor's (*"Jane Doe VI"*) petition without any explanation on the record. In an unreported ruling a divided panel of the appellate court affirmed the Franklin County Court's decision. Jane Doe VI was 17½ years old, a high school student in good standing and had been accepted to college for the fall semester of 1992.

Plaintiffs allege that in an attempt to circumscribe the discretion of juvenile court judges, the minor in *Jane Doe I,* 57 Ohio St.3d 135, 566 N.E.2d 1181 (1991), proposed that the Ohio Supreme Court adopt a six-factor test for juvenile courts to weigh as factors that are indicative of a minor's maturity or competence to give informed consent. The minor proposed the following factors:

a. Age. Minors fifteen and older should generally be held to possess sufficient maturity to consent to their own abortion without notice to the parent;

b. Overall intelligence. The minor should possess sufficient intelligence to understand her situation and her options;

c. Ability to accept responsibility. Examples could be drawn from life at home, in school or elsewhere;

d. Ability to assess the future impact of her present choices;

e. Whether the minor is making an affirmative personal decision and not being forced into her decision by a third person;

f. Whether the minor will understand the benefits and risks of the abortion procedure and apply that understanding when making her decision.

*Id.* at 138–39 n. 2, 566 N.E.2d 1181. While the court noted that the proposed factors were factors that juvenile court judges would in all likelihood consider when reviewing a petition, it declined to adopt them or any other guidelines because it believed that to be a legislative function.[4] In their complaint, plaintiffs take issue with this refusal to "constrain the lower courts."

At first glance, it appears that plaintiffs are making a vagueness challenge to the statute: due to the absence of binding guidelines on what constitutes maturity, juvenile courts are free to make and are making

---

**4.** *Jane Doe I* is a 4–3 plurality opinion. One member of the plurality concurred only in the syllabus law and result. He noted that five of the six criteria proposed by the minor seemed appropriate. The three dissenting justices would have adopted standards to guide the lower courts.

They believed such standards would promote consistent interpretation·of the statute's "maturity" and "best interests" requirements and would allow for the development of a record that would allow for meaningful appellate review.

arbitrary decisions.[5] However, vagueness challenges are facial challenges, and such challenges are foreclosed here where the Supreme Court has held that this statute comports with due process on its face. *Akron II*, 497 U.S. 502, 110 S.Ct. 2972. In any event, plaintiffs do not claim to be making a facial challenge, rather, they assert that they are challenging the statute as applied.

The Supreme Court left open the possibility of an operational challenge to a facially valid restriction on access to abortions. *See Bellotti v. Baird*, 443 U.S. 622, 645 n. 25, 99 S.Ct. 3035, 3049 n. 25, 61 L.Ed.2d 797 (1979) (*"Bellotti II"*). The First Circuit has recognized that "a requirement unduly burdensome in operation will be struck down even if not clearly invalid on its face." *Planned Parenthood League v. Bellotti*, 868 F.2d 459, 469 (1st Cir.1989) (*"Bellotti IV"*) (quoting *Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1022 (1st Cir.1981) (*"Bellotti III"*)).

In *Bellotti IV*, the First Circuit allowed plaintiffs the opportunity to demonstrate the unconstitutionality of a similar parental consent/judicial bypass statute as actually implemented in Massachusetts. The court emphasized that the plaintiffs' burden was a strenuous one where, as here, the statute had survived a facial challenge. "More than occasional frustration, discomfort, and inconvenience would have to be shown.... [T]he success of an operational attack in this context requires proof of a '*systemic failure* to provide a judicial bypass option in the most expeditious, practical manner.'" *Bellotti IV*, 868 F.2d at 469 (quoting *Hodgson v. Minnesota*, 648 F.Supp. 756, 777 (D.Minn.1986)) (emphasis added).

Unlike plaintiffs in this case, the *Bellotti IV* plaintiffs ("PPLM") alleged systemwide failures in the judicial bypass program. PPLM complained that some state judges were *de facto* unavailable to hear minors'

abortion petitions because of their hostility towards abortion. The court found that the evidence of the *de facto* unavailability of certain judges was relevant to the delay in processing petitions. PPLM was prepared to offer statistical evidence of accessibility, delay, and continuances, the demeanor of judges and the trauma of petitioners that allegedly showed that in practice, the judicial bypass procedure placed an unconstitutional burden on the minors' right to seek an abortion.

Unlike PPLM's challenge in *Bellotti IV*, involving delays in the process itself that threatened to deprive minors of the bypass alternative, plaintiffs in the present case do not allege deficiencies in the access to judicial bypass decisions. They instead offer specific cases in which a certain judge arguably made an arbitrary decision. Plaintiffs do not and cannot allege that *all* Ohio juvenile court judges are implementing the statute arbitrarily. Indeed Exhibit A attached to plaintiffs' complaint reveals that in some cities like Columbus and Dayton, only 2 to 6% of the requests are denied. Additionally, under the statute, Ohio Rev.Code Ann. § 2505.073, minors faced with an arbitrary denial have a right to an expedited appeal to Ohio's appellate courts. The reviewing courts can and have overturned juvenile court decisions denying waivers. *See, e.g., In re Jane Doe*, 83 Ohio App.3d 904, 615 N.E.2d 1142 (Ohio Ct. App.1992). Plaintiffs do not claim that all judges are making wrong decisions. The deficiency that they challenge is not a systemic deficiency.

Plaintiffs' real complaint is this: Certain judges are making the wrong decisions under a constitutional statute. What they are seeking is a pronouncement that when a state court makes an erroneous factual determination with respect to the maturity or best interest of a minor, it is a denial of due process. Substantive due process has never

---

**5.** It is unlikely that the proliferation of guidelines would make a difference in the outcome of these decisions. The judges who are making allegedly arbitrary decisions now are in all likelihood considering these factors and discounting them. Under the statutory scheme, the minor bears the burden of proving her maturity by clear and convincing evidence. She may present evidence,

including evidence covering the proposed factors in *Jane Doe I*, to show that she "is sufficiently mature and well enough informed to decide intelligently whether to have an abortion." Ohio Rev.Code Ann. § 2151.85(C)(1). It is the judges' decisions that are challenged, not the evidence before them.

been held to extend to wrong decisions of state courts and we will not be the first to so rule. "[L]ower federal courts possess no power whatever to sit in direct review of state court decisions." *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 296, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970). "[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings. [Federal r]eview of such judgments may be had only in [the Supreme] Court." *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 1314, 75 L.Ed.2d 206 (1983). Under 28 U.S.C.A. § 1257, the Supreme Court has jurisdiction to hear appeals from state cases from the states' highest courts. "A review by the Supreme Court of a judgment or decree of a State court shall be conducted in the same manner and under the same regulations, and shall have the same effect, as if the judgment or decree reviewed had been rendered in a court of the United States." 28 U.S.C.A. § 2104 (West Supp.1993). Federal courts are courts of limited jurisdiction. "Jurisdiction of the lower federal courts is . . . limited to those subjects encompassed within a statutory grant of jurisdiction. . . . [T]his reflects the constitutional source of federal judicial power: Apart from [the Supreme] Court, that power only exists 'in such inferior Courts as the Congress may from time to time ordain and establish.' Art. III, § 1." *Insurance Corp. v. Compagnie des Bauxites,* 456 U.S. 694, 701–02, 102 S.Ct. 2099, 2103–04, 72 L.Ed.2d 492 (1982). Other than the writ of habeas corpus, *see* 28 U.S.C. § 2254, which has no application here, there is no constitutional or statutory authority that permits a federal court to review the decisions of state courts. Because we cannot redress the alleged injuries, we hold that plaintiffs lack standing to bring this action.

"We are required to note any jurisdictional defects whether or not raised by the parties. '[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.'" *Easley v. Pettibone Corp.,* 990 F.2d 905, 908 (6th Cir.1993) (quoting *Greater Detroit Resource Recovery*

*Authority v. United States Environmental Protection Agency,* 916 F.2d 317, 319 (6th Cir.1990)). Although the District Court dismissed the action on a different standing issue, we affirm the dismissal because both we and the District Court are without jurisdiction to provide plaintiffs with the relief that they seek, namely the review of arbitrary state court decisions. "A decision below must be affirmed if correct for any reason, including a reason not considered by the lower court." *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.,* 772 F.2d 214, 216 (6th Cir.1985) (per curiam) (citing *J.E. Riley Investment Co. v. Comm'r,* 311 U.S. 55, 59, 61 S.Ct. 95, 97, 85 L.Ed. 36 (1940)).

## IV.

We AFFIRM the District Court's order granting defendants' motions to dismiss.

CONTIE, Senior Circuit Judge, concurring.

Though I agree with the majority's conclusion that the district court's order granting the defendants' motions to dismiss should be affirmed, I do so for the reasons articulated by the district court.

"The issue of standing, and whether a federal court has the power to adjudicate a suit, is 'the threshold question in every federal case.'" *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati,* 822 F.2d 1390, 1394 (6th Cir.1987) (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975)). The standing issue involves two levels of inquiry:

> The first is of a constitutional dimension and involves determining whether the plaintiff has shown that a "case or controversy" exists between the parties as defined by Article III. This can be accomplished by proving an actual injury or injury in fact which is "likely to be redressed by a favorable decision." The second inquiry involves considering whether, as a prudential matter, the plaintiff is the proper proponent of the rights on which the action is based.

*Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati,* 822 F.2d at 1394 (citations omitted).

The district court dismissed the plaintiffs' action for lack of standing after finding that "the plaintiff-physicians who operate the abortion clinics in the present case have not expressed an intent to violate the statute and perform abortions on minors who have secured neither parental nor judicial consent." District Court's August 27, 1992 Memorandum Opinion at 9.

Though a physician that has never been threatened with prosecution may nevertheless gain standing to challenge the constitutionality of a state's abortion law, the physician *must* express an intent to violate the law. *See Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) ("When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'") (citation omitted); *Singleton v. Wulff,* 428 U.S. 106, 113, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976) (The physicians' complaint and affidavits "allege that they have performed and will continue to perform operations for which they would be reimbursed under the Medicaid program, were it not for the limitation of reimbursable abortions to those that are 'medically indicated.'"); *United Food & Commercial Workers Int'l v. IBP, Inc.,* 857 F.2d 422, 428 (8th Cir.1988) ("Where plaintiffs allege an intention to engage in a course of conduct arguably affected with a constitutional interest which is clearly proscribed by statute, courts have found standing to challenge the statute, even absent a specific threat of enforcement."); *Akron Center for Reproductive Health, Inc. v. City of Akron,* 651 F.2d 1198, 1211 (6th Cir. 1981) ("[D]enial of such standing to the plaintiff-physician was properly based upon the fact that he had never even expressed a desire to perform a post-viability abortion. Thus, this plaintiff suffered 'no injury in fact.' [F]ailing to meet this requirement, the plaintiff did not have 'a sufficiently concrete inter-

est in the outcome' of this action to make it a case or controversy under Article III of the Constitution."), *aff'd in part, rev'd in part,* 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) (citations omitted).

Though a party need not subject himself to actual prosecution before bringing an action to challenge a statute, standing requires more than a theoretical possibility of prosecution. To ensure a personal stake sufficient to establish standing, there must be a real threat of prosecution. If a party does not intend to violate the statute, there can be no fear of prosecution.

Because the plaintiffs failed to allege an intent to violate Ohio's judicial bypass statute, the district court properly dismissed the plaintiffs' complaint on August 27, 1992, and properly rejected the plaintiffs' "Motion To Reconsider And Alter, Or, Alternatively, To Amend The Judgment" on November 20, 1992.