OKLAHOMA CHAPTER OF THE AMERICAN ACADEMY OF PEDIATRICS (OKAAP), et al., Plaintiffs,

v.

Michael FOGARTY, Chief Executive Officer of the Oklahoma Health Care Authority (OHCA), et al., Defendants.

No. 01–C–187–EA(J).

United States District Court, N.D. Oklahoma.

May 21, 2002.

Michael Joseph Lissau, Hall Estill Hardwick Gable, Golden & Nelson, Tulsa, OK, Louis W Bullock, Patricia W Bullock, Robert Murray Blakemore, Bullock & Bullock, Tulsa, OK, Thomas K Gilhool, Public Interest Law Center of Philadelphia, Philadelphia, PA, for Oklahoma Chapter of the American Academy of Pediatrics (OKAAP), Community Action Project of Tulsa County, Oklahoma, (CAPTC), Tracy T, as mother and next friend of Katelyn M. Wilbanks nfr Katelyn M Wilbanks, Lisa P, as mother and next friend of Joshua Lee O'Neal, Eric Hartman Cammiso, Melissa Ann Padelford and Mathew Scott Padelford nfr Joshua Lee O'Neal nfr Eric Hartman Cammiso nfr Melissa Ann Padelford nfr Mathew Scott Padelford, Rowena T, as parent and next friend of Christy A. Towler, Katherine P. Towler and Jacob W. Towler nfr Christy A Towler nfr Katherine P Towler nfr Jacob W Towler, Kevin T, as parent and next friend of Christy A. Towler, Katherine P. Towler and Jacob W Towler nfr Christy A Towler nfr Katherine P Towler nfr Jacob W Towler, Janice G, as parent and next friend of Charles A. Scanlan and Robert M. Garvin nfr Charles A Scanlan nfr Robert M Garvin, Theodore G, as parent and next friend of Charles A. Scanlan and Robert M. Garvin nfr Robert M Garvin nfr Charles A Scanlan, Regina H, as parent and next friend of Jacob W. Hercules and Everett L. Hercules nfr Jacob W Hercules nfr Everett L Hercules, Gus H, as parent and next friend of Jacob W Hercules and Everett L. Hercules nfr Jacob W Hercules nfr Everett L Hercules, Heather R, as parent and next friend of Stephanie Moncrief nfr Stephanie Moncrief, All Plaintiffs, plaintiffs.

James McKee Robinson, Office of the Attorney General, Oklahoma City, OK, Andrew J Tevington, Oklahoma Health Care Auth, General Counsel, Oklahoma City, OK, Lynn S Rambo–Jones, Oklahoma Health Care Authority, Oklahoma City, OK, for Michael Fogarty, Chief Executive Officer of the Oklahoma Health Care Authority (OHCA), Lynn Mitchell, State Medicaid Director, Charles Ed McFall, Chairman of the OHCA Board of Directors, T J Brickner, Jr, Vice–Chair of the OHCA Board of Directors, Wayne Hoffman, Member of the OHCA Board of Directors, Jerry Henlee, Member of the OHCA Board of Directors, Ronald Rounds, O.D., Member of the OHCA Board of Directors, George Miller, Member of the OHCA Board of Directors, Lyle Roggow, Member of the OHCA Board of Directors, Jerry Humble, Member of the OHCA Board of Directors, defendants.

## ORDER

EAGAN, District Judge.

Before the Court is the Motion to Dismiss (Dkt.# 21) filed by the defendants Michael Fogarty, Chief Executive Officer of the Oklahoma Health Care Authority ("OHCA"); Lynn Mitchell, State Medicaid Director; Charles Ed McFall, Chairman of the OHCA Board of Directors; T.J. Brickner, Jr., Vice–Chair of the OHCA Board of Directors; and Wayne Hoffman, Jerry Henlee, Ronald Rounds, O.D., George Miller and Lyle Roggow, members of the OHCA Board of Directors. Defendants move to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6).

A motion to dismiss is properly granted when it appears beyond doubt that plaintiffs could prove no set of facts entitling them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Calderon v. Kansas Dept. of Social & Rehabilitation Services,* 181 F.3d 1180, 1183 (10th Cir.1999). For purposes of making this determination, a court must "accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff[s]." *Calderon,* 181 F.3d at 1183; *see also Dill v. City of Edmond,* 155 F.3d 1193, 1201 (10th Cir.1998).

## I.

Plaintiff Oklahoma Chapter of the American Academy of Pediatrics ("OKAAP") is a nonprofit professional organization of pediatricians and pediatric specialists who are qualified to provide Early and Periodic Screening, Diagnosis and Treatment ("EPSDT") services to eligible Oklahoma children. OKAAP's purpose is to foster improvements in the health and welfare of infants, children and adolescents in the State of Oklahoma. Plaintiff Community Action Project of Tulsa County, Inc. ("CAPTC") is a non-profit organization located in Tulsa, Oklahoma whose purpose is to help individuals and families in economic need achieve self-sufficiency in an atmosphere of respect. CAPTC operates, among other programs, the Head Start program for Tulsa County, and is thereby obligated to ensure that all children in its Head Start program receive essential medical, dental, developmental, mental heath and rehabilitation services. At least 90% of the children served by CAPTC's Head Start program are financially eligible for Medical Assistance.[1] The individual named plaintiffs are thirteen children and their parents who complain that they have not received timely, equal, or appropriate access to medical services in Oklahoma. Plaintiffs' class consists of children under the age of 21 who are now, or in the future will be, residing in Oklahoma and who are, or will be, eligible for Medical Assistance.

Defendants are officials of the State of Oklahoma and OHCA, the designated agency responsible for implementing and administering Oklahoma's Medical Assistance program to eligible children. Since 1995, OHCA has developed two managed care delivery systems for its Medical Assistance program for children—SoonerCare Plus and SoonerCare Choice. Under the SoonerCare Plus program, OHCA contracts directly with Health Maintenance Organizations ("HMOs") to provide EPSDT services to children who reside in Tulsa, Oklahoma City, and Lawton, and surrounding counties. The SoonerCare Choice program serves the remainder of the counties. Under this program, the OHCA contracts with primary care physicians, including pediatricians, on a capitated payment basis to provide basic health care. All other necessary health care services to children in the SoonerCare Choice program are paid by OHCA on a fee-for-service basis.

Plaintiffs contend OHCA has not furnished Title XIX health care services to all enrolled Oklahoma children, let alone those who are eligible but not enrolled. Plaintiffs allege that 40% of Oklahoma's

---

1. Federal funding for children's health care is provided pursuant to Social Security Act "Title XIX", 42 U.S.C. § 1396, and the State Children's Health Insurance Program ("S–CHIP"), "Title XXI," 42 U.S.C. § 1397aa. Although eligibility and funding under Title XIX and S–CHIP are distinct, Oklahoma provides services to S–CHIP eligible children under its Title XIX program. "Medical Assistance" refers to required Title XIX and Early and Periodic Screening, Diagnosis and Treatment ("EPSDT") services to be provided to eligible Oklahoma children.

children are eligible for Medical Assistance. In the year ending September 30, 1999, 67% of Oklahoma children enrolled in Medical Assistance and due for at least one comprehensive screening examination did not receive any; only 10% of enrolled children who should have been furnished a dental evaluation and preventive dental care received any; and access to pediadontists for eligible children is virtually non-existent. Plaintiffs assert the OHCA's contracts with HMOs have not secured the capacity to deliver promptly and completely the required EPSDT services, nor are payments to pediatric and specialty providers of such services sufficient to enlist enough providers to offer health care which is available to the general population in the geographic area who have private or public insurance coverage, as required under Title XIX, 42 U.S.C. § 1396a(a)(30). Finally, plaintiffs contend OHCA has failed to establish and utilize cooperative arrangements with other children's service agencies to secure enrollment, re-enrollment, extension, maintenance, presumptive eligibility, transportation, scheduling, case management and ease of reporting to all enrolled and eligible children, their families and providers. In short, plaintiffs allege that due to the acts and omissions of defendants, eligible children are not receiving EPSDT benefits and do not have equal access to medical services required by Title XIX.

Plaintiffs bring this class action pursuant to 42 U.S.C. § 1983 against defendants to (1) enjoin defendants from "depriving children of timely, complete and continuing health care and services in violation of Title XIX of the Social Security Act, its implementing federal regulations and guidelines, 42 U.S.C. § 1396 *et seq.*"; (2) "ensure payments to providers, including pediatricians, pediatric subspecialists, and other specialty care physicians, are sufficient to ensure children receiving Medical Assistance have access to care and services at least to the extent that such care and services are available to other children in the geographic area as required by 42 U.S.C. § 1396a(a)(30)(A)"; (3) require "defendants to design, implement, ensure, and enforce managed care arrangements which deliver in a prompt and continuing fashion, the full array of children's health care services required to be delivered by Title XIX"; and (4) require that defendants "bring children's health care to the children, including: aggressively informing children and their families of Oklahoma's obligation to promptly furnish complete and continuing children's health care; fully utilizing cooperative arrangements with other child-intensive agencies in order to effectively achieve the enrollment and easy reenrollment of all eligible children and also in order to accomplish the actual delivery of necessary health care and services to all enrolled children; and providing scheduling assistance, outstations and case-management." Complaint, Dkt. # 64, at 5–6.

## II.

Defendants seek dismissal based on the following arguments: (1) the Eleventh Amendment to the United States Constitution prohibits this Court from exercising jurisdiction over the persons of the defendants who are state employees sued in their "official capacities"; and (2) plaintiffs have no right of action under 42 U.S.C. § 1983, or standing to seek the relief requested. These arguments were successful in *Westside Mothers v. Haveman,* 133 F.Supp.2d 549 (E.D.Mich.2001), a case involving an similar claim which the Michigan court dismissed. Defendants incorporate that opinion by reference in their motion to dismiss.

Since defendants filed their motion, at least five courts have declined to follow *Westside,* including one from the same dis-

trict. *Markva v. Haveman,* 168 F.Supp.2d 695 (E.D.Mich.2001); *see also Rancourt v. Concannon,* 175 F.Supp.2d 60 (D.Me. 2001); *Bryson v. Shumway,* 177 F.Supp.2d 78 (D.N.H.2001); *Memisovski v. Patla,* No. 92 C 1982, 2001 WL 1249615 (N.D.Ill., Oct.17, 2001); *Boudreau v. Ryan,* No. 00–C–5392, 2001 WL 840583 (N.D.Ill., May 2, 2001). *Westside*'s holding and rationale are not supported by the law of the Tenth Circuit, as set forth in two opinions subsequent to the filing of defendants' motion. *See Joseph A. v. Ingram,* 275 F.3d 1253 (10th Cir.2002) (rejecting Eleventh Amendment challenge to suit brought by children claiming denial of meaningful access to adoption services by state agency administering child welfare services under Title IV of the Social Security Act); *Lewis v. New Mexico Dep't of Health,* 261 F.3d 970, 975–76 (10th Cir.2001) (rejecting Eleventh Amendment challenge to suit brought by Medicaid recipients claiming that use of waiting list by state agency administering Medicaid waiver program violated 42 U.S.C. § 1396a(a)(8)). Westside itself was reversed by the Sixth Circuit on May 15, 2002. *Westside Mothers v. Haveman,* 289 F.3d 852 (6th Cir.2002)

## A. The Eleventh Amendment

 The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State.

The United States Supreme Court has interpreted the Eleventh Amendment to apply to federal question suits against a State brought by its own citizens. *Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 267–68, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). There are exceptions to Eleventh Amendment immunity, but plaintiffs rely instead on the doctrine set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). As set forth in *Lewis,* "Although citizens may not generally sue states in federal court under the Eleventh Amendment, the *Ex parte Young* doctrine has carved out an alternative, permitting citizens to seek prospective equitable relief for violations of federal law committed by state officials in their official capacities." *Lewis,* 261 F.3d at 975 (citing *Ex parte Young,* 209 U.S. at 159–60, 28 S.Ct. 441); *see also Ingram,* 275 F.3d at 1260.

The Tenth Circuit has outlined a four-part test to apply *Ex parte Young:* (1) the plaintiff is suing state officials, rather than the state itself; (2) the plaintiff has alleged a non-frivolous violation of federal law; (3) the plaintiff seeks prospective equitable relief, rather than retroactive monetary relief from the state treasury; and (4) the suit does not implicate "special sovereignty interests." *Elephant Butte Irrigation Dist. of N.M. v. Department of the Interior,* 160 F.3d 602, 609 (10th Cir.1998). This suit has been brought against officials of the State of Oklahoma and OHCA. As the Tenth Circuit explained in a similar case, "[t]he state is not the real party in interest because the state cannot authorize the officials to violate federal law." *Id.* at 610. Plaintiff have alleged a non-frivolous violation of a federal law, Social Security Act "Title XIX", 42 U.S.C. § 1396, *et seq.* Plaintiffs seek prospective equitable relief: specifically, injunctive relief requiring defendants to fully comply with Title XIX. Finally, the Tenth Circuit has specifically observed that "[a] state's interest in administering a welfare program at least partially funded by the federal government is not such a core sovereign interest as to preclude the application of *Ex parte Young.*" *J.B. ex rel. Hart v. Valdez,* 186 F.3d 1280, 1287 (10th Cir.1999).

Two of defendants' arguments merit special attention: the argument that Title XIX is not the supreme law of the land, and the argument that the court may not substitute an alternative form of relief when Title XIX sets forth a specific remedy. The first argument is foreclosed by *Kansas v. United States*, 214 F.3d 1196 (10th Cir.), *cert. denied*, 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000).[2] That case involved a sovereignty challenge to the constitutionality of an enactment which imposed clear and unambiguous conditions (requiring various kinds of state action on child support services) upon grant monies made available to states by TANF and Medicaid (both spending power statutes). The court held that, so long as the state took the grant monies, the state was obligated to carry out the conditions attached to them. *Id.* at 1199–1201. Title XIX is the supreme law of the land.

The second argument is foreclosed by *Ingram*, where the Tenth Circuit specifically refused to apply the Supreme Court's decision in *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (cited by defendants here). The Supreme Court held in the *Seminole Tribe* case that "where Congress has prescribed a detailed remedial scheme for the enforcement against a state of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young*." *Id.* at 74, 116 S.Ct. 1114. The *Ingram* court held that the statutes at issue in that case, like the ones at issue here, did not provide remedial schemes sufficient to foreclose *Ex parte Young* jurisdiction. 275 F.3d at 1264. The court reasoned, in part: "Court

have consistently held that statutory schemes that merely give oversight and funding control to the federal government do not foreclose § 1983 claims." *Id.* at 1263. The court also observed that "the possibility of some state court remedies does not suggest that Congress intended to foreclose federal remedies." *Id.* at 1264. Defendants' argument here is based on similar remedial provisions. The court does not find it persuasive. *Ex parte Young* is applicable; this suit is not barred by Eleventh Amendment.

## B. 42 U.S.C. § 1983

■■ To establish a claim under section 1983, plaintiffs must plead and prove that defendants, acting under color of state law, deprived plaintiffs of a right, privilege, or immunity secured by the Constitution or the laws of the United States. *E.g.,* *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). Three factors are significant when determining whether a particular statutory provision gives rise to a federal right: "First, Congress must have intended that the provision in question benefit the plaintiff. . . . Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence. . . . Third, the statute must unambiguously impose a binding obligation on the States." *Blessing*, 520 U.S. at 340–41, 117 S.Ct. 1353 (citations omitted).

■ It is well settled that Title XIX of the Social Security Act creates rights which are enforceable in a private action brought under section 1983. *E.g.,* *Planned Parenthood v. Dandoy*, 810 F.2d

---

**2.** At least four circuit courts have held or implied that state laws conflicting with Title XIX or the Medicaid law are invalid under the Supremacy Clause. *See Planned Parenthood v. Engler*, 73 F.3d 634, 637 (6th Cir.1996);

*Elizabeth Blackwell Health Center for Women v. Knoll*, 61 F.3d 170, 178 *(3d Cir.1995); *Lewis v. Hegstrom*, 767 F.2d 1371, 1375 (9th Cir.1985); *Randall v. Lukhard*, 709 F.2d 257, 264 (4th Cir.1983).

984 (10th Cir.1987) (action by a Medicaid provider in an official capacity suit for prospective injunctive relief); *Ramey v. Rizzuto,* 72 F.Supp.2d 1202 (D.Colo.1999) (alleged improper denial of Medicaid benefits to permanently disabled persons was actionable under 42 U.S.C. § 1983).

■ The specific statutory provisions at issue in this matter include 42 U.S.C. §§ 1396a(a)(8), 1396d(a)(4)(B), 1396d(r), 1396a(a)(30)(A), 1396u–2(b)(5), 1396u–2(c), and 1396u–2(e). As set forth by plaintiffs, the first four of these provisions have been held to create federal rights. *See Westside Mothers,* 289 F.3d at 855–57; *Doe v. Chiles,* 136 F.3d 709, 719 (11th Cir.1998); *Miller v. Whitburn,* 10 F.3d 1315, 1319 (7th Cir.1993); *Arkansas Medical Society v. Reynolds,* 6 F.3d 519, 523–29 (8th Cir. 1993); *Mitchell v. Johnston,* 701 F.2d 337, 346–48 (5th Cir.1983); *Stanton v. Bond,* 504 F.2d 1246, 1250–51 (7th Cir.1974). The remaining three provisions meet the criteria as well, given that they apply the duties of the first four provisions to the state official's management of managed care organizations. The Court is also persuaded by the mandatory language contained in those provisions indicating that the state "shall" or "must" do certain things to be in compliance with the law. At least one of those remaining three provisions, section 1396u–2(b)(5), is also addressed in the Sixth Circuit's opinion in *Westside Mothers,* 289 F.3d at 855. Plaintiffs have demonstrated that the rights assertedly protected by the statute are not so "vague and amorphous" that its enforcement would strain judicial competence, and the statute unambiguously imposes a binding obligation on the states.

■ Undoubtedly, Congress intended that these provisions benefit the child plaintiffs here. *See* 42 U.S.C. § 1396a(a)(10)(A). The more difficult question is whether Congress intended to benefit the physician plaintiffs who may provide medical care to children like plaintiffs and a non-profit organization that operates a head start program for such children. In *Westside Mothers,* the circuit court found that the Michigan chapters of the American Academy of Pediatrics and of the American Academy of Pediatric Dentists had standing to bring a claim under 42 U.S.C. § 1983, noting that section 1396a(a)(30)(A) speaks of the need to "assure that payments . . . are sufficient to enlist enough providers." Further, the two organizations had also shown actual or threatened injury, fairly traceable to the defendant's challenged action, which can likely be redressed by a favorable decision. 289 F.3d at 863–64 (citing *Cleveland Surgi–Center, Inc. v. Jones,* 2 F.3d 686, 688 (6th Cir.1993)).

■ *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), sets forth the standard for organization standing: (a) when its members would have standing in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief sought requires the participation of individual members in the lawsuit. *Id.* at 343, 97 S.Ct. 2434. Pediatric health providers have standing to sue in their own right to enforce Title XIX. *Arkansas Medical Society, Inc. v. Reynolds,* 6 F.3d at 528 ("Medicaid recipients and providers individually have standing to contest the Medicaid Laws"). The Tenth Circuit has held that Title XIX providers themselves have federal rights enforceable in a section 1983 action. *Amisub (PSL), Inc. v. Colorado Dep't of Social Servs.,* 879 F.2d 789, 793–94 (10th Cir.1989). Further, it held that providers have standing to raise federal rights of recipients in *Colorado Health Care Ass'n. v. Colorado Dep't of Social*

**1273**

*Servs.*, 842 F.2d 1158, 1164 n. 5 (10th Cir.1988).

OKAAP and CAPTC have standing to bring these claims. OKAAP's purpose is to foster improvements in the health and welfare of infants, children and adolescents in the State of Oklahoma. Individual participation is not required because the claims of providers and the children they serve require the Court to examine state-wide statistics "that can easily be supplied by the organization[ ]." *Arkansas Medical Society*, 6 F.3d at 528. Nor does relief require individual participation since any injunctive relief granted would inure to the benefit of all OKAAP members and children actually injured. *See Neighborhood Action Coalition v. City of Canton*, 882 F.2d 1012, 1017 (6th Cir.1989).

Although CAPTC is not a provider, its purpose is to help individuals and families in economic need achieve self-sufficiency in an atmosphere of respect. In furtherance of that purpose CAPTC seeks to ensure that all children in its Head Start program receive essential medical, dental, developmental, mental heath, and rehabilitation services. *Hunt* held that a non-membership organization may have representative standing when it essentially performs the functions of an association representing the parties adversely affected; when those adversely affected possess all the "indicia" of membership in the organization; and when the interests of the organization itself could be adversely affected by the outcome of the litigation. 432 U.S. at 345, 97 S.Ct. 2434. CAPTC has many children in its Head Start program that need the services plaintiffs are obligated to provide; they are, essentially, members of CAPTC by virtue of their enrollment in its Head Start program, and CAPTC's interests in educating children are certainly affected by the health of those children it serves. CAPTC has been injured, or suffers the threat of injury, because of the resources it has to divert to provide the health services allegedly not provided by defendants or to counteract the effects of the alleged lack of health care services to the children and families to whom it provides services. *Cf. Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

### Conclusion

For these reasons, defendants' Motion to Dismiss (Dkt.# 21) is hereby **DENIED**.