TACHA, Circuit Judge.
Plaintiffs, sixteen mentally or developmentally disabled children who are or were in the custody of the state of New Mexico, brought this action for declaratory and injunctive relief alleging that defendants have failed to provide protections and therapeutic services required by federal statutes and the United States Constitution. Plaintiffs sought to certify a class comprised of “[a]ll children who are now or in the future will be (a) in or at risk of State custody and (b) determined by defendants and/or their agents to have any form of mental and/or developmental disability for which they require some kind of therapeutic services or support.” Appellants’ App., Vol. 2, at 226. The district court denied *1283 class certification and further abstained from hearing the case. Twelve of the sixteen original plaintiffs appeal these rulings.[1] We affirm.
I. Procedural History
Plaintiffs, through them next friends, seek structural reform of New Mexico’s system for evaluating and treating children with mental and developmental disabilities in its custody. The stories of the named plaintiffs reveal a child welfare system having terrible difficulties providing the children with the kind of care and treatment they deserve.
In an effort to improve the services and protections provided by the state and to effect system-wide change, plaintiffs initiated this action in November 1993 by filing a class action complaint. They amended the complaint in March 1994, alleging that the defendants, several New Mexico state officers,[2] had violated the Rehabilitation Act of 1978, the Americans with Disabilities Act (“ADA”), the Medicaid Act, the Alcohol, Drug Abuse and Mental Health Reorganization Act (“ADAMHRA”), the Individuals with Disabilities Education Act (“IDEA”), and the Fourteenth Amendment. In essence, plaintiffs charged the state with failing to provide them services, benefits, and protections guaranteed by federal statutory and constitutional law. In May 1995, the parties entered into a stipulation of additional facts to provide the district court with an update regarding the custodial status of the named plaintiffs. The parties informed the court that they intended it to consider this stipulation as part of the complaint. On October 6, 1995, the district court dismissed with prejudice plaintiffs’ claims under the ADAMHRA and certain claims under the IDEA, as well as some claims against the Secretary of the New Mexico Department of Health, the Secretary of the New Mexico Human Services Department, and members of the State Board of Education. In addition, the district court dismissed without prejudice certain claims under the Rehabilitation Act, the ADA, and the Fourteenth Amendment. Plaintiffs do not appeal from these rulings.
In March 1994, plaintiffs moved for class certification. The district court sua sponte ordered the parties to stipulate to additional facts regarding the current status of each named plaintiff. The parties filed this second stipulation of facts on May 10, 1996. On June 26, 1996, after all of the above filings and order of dismissal, the district court denied class certification. In October 1996, the district court granted reconsideration of its previous denial of defendants’ February 1995 motion to abstain. Upon reconsideration, the district court found .abstention appropriate based on Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1970), and its progeny.
Plaintiffs appeal the district court’s denial of class certification and decision to abstain. Defendants, for the first time on *1284 appeal, additionally argue that the Eleventh Amendment precludes us from hearing this case.
II. Factual Background
Plaintiffs estimate, and defendants do not dispute, that New Mexico has approximately 3000 children in its custody and that at least 1000 have mental or developmental disorders. Children with disabilities in state custody may receive a range of treatments, from in-home support services for the family to complete institutionalization. As shown by the complaint and succeeding stipulations of fact, the named plaintiffs have varied backgrounds, needs, and custodial situations. For the purposes of this appeal, we take the allegations contained in the complaint as true. See 2 Herbert Newberg & Alba Conte, Newberg on Class Actions § 7.26 (3d ed.1992). Moreover, because the complaint does not tie any of its broad allegations with the individual named plaintiffs, we have liberally construed, with the help of the district court’s order of dismissal, the violations that pertain to each child.
J.B. has at least six mental and developmental disabilities. Fourteen years old at the time of the complaint, the state had placed him in custody two years earlier because of parental abuse. The state first placed him in a children’s psychiatric hospital for evaluation and treatment before moving him to a special needs foster home, two private psychiatric hospitals, a group home, a residential treatment center, a homeless shelter, and a regular foster home. At the time of the complaint, J.B. resided in a special needs foster home. However, according to the 1995 stipulation, New Mexico had placed him in eleven separate facilities or programs since then. He frequently ran away from these environments and was once arrested for shoplifting. According to the 1996 stipulation of facts, the state placed J.B. in a juvenile detention center for a period of time. At the latest update, he resided in a motel and received social worker and parole officer services. Plaintiffs allege that defendants violated the ADA and Rehabilitation Act by placing J.B. in an overly restrictive environment, failing to facilitate a permanent placement for him, and failing to provide him with an appropriate educational program. They further claim a violation of the IDEA because J.B. received no appointed surrogate parent to protect his educational rights.
Y.A., D.A., E.A., F.A., V.C., and C.C. are siblings who each have several developmental, emotional, and behavioral disabilities. The state took them into custody in 1990 and has moved them repeatedly, never placing more than two of the siblings together. According to the 1995 stipulation, Y.A. had received eleven placements since the complaint. By 1996, Y.A. had turned eighteen, and the state had discharged her from custody. She currently receives social security benefits. The state initially placed D.A. in a residential treatment center. The 1995 stipulation indicates that he lived with his mother, except for a week spent at a juvenile detention center after an arrest. By May 1996, a judicial order had discharged him from state custody at the age of sixteen. At that time, D.A. lived in the family home and received social security benefits while his family received support services from defendants. E.A., F.A., V.C., and C.C. received placements in foster homes. The subsequent stipulations of facts indicate that the state returned them to their mother’s care and discharged them from state custody.
Plaintiffs argue that defendants violated the rights of each of these siblings under the ADA and Rehabilitation Act because they placed them in overly restrictive settings and failed to provide them with appropriate educational programs. They further claim that defendants violated these children’s Fourteenth Amendment right to family integrity by placing them in separate locations. They allege an additional violation to Y.A., D.A., E.A., and F.A.’s rights for failure to facilitate a permanent placement.
*1285 The state took custody of siblings R.E., C.E., J.E., and E.E. because of abuse and neglect, returning them to their mother after one year. R.E. suffers from emotional and behavioral disabilities, while C.E., J.E., and E.E. have developmental and behavioral disabilities. With respect to R.E., her mother did not want her returned because the state did not provide in-home services and three disabled sons overwhelmed her. By May 1995, a judicial order discharged R.E. from state custody although she remained under the protective supervision of the Children, Youth and Families Department (“CYFD”). She also received Medicaid services. The other siblings were placed in a variety of locations. According to the 1995 stipulation, C.E. had resided in foster homes, psychiatric hospitals, and a companion home operated by the Association of Retarded Citizens and had a treatment guardian. J.E. also lived in the companion home. Meanwhile, E.E. resided in various foster homes, a temporary respite home, and the companion home and has had a treatment guardian appointed. By the 1996 update, C.E. and J.E. resided in a foster home operated by the Association of Retarded Citizens, have had a surrogate appointed, and received social security benefits and case management, psychological, and special education services. E.E. resided in a different foster home and received services similar to his siblings. Plaintiffs allege that New Mexico officials violated the ADA and Rehabilitation Act by failing to provide in-home services to R.E., C.E., J.E., and E.E., and appropriate educational and therapeutic services to R.E. and C.E. They further claim that defendants failed to preserve the siblings’ family integrity by placing them in different settings.
J.S. suffers from physical, developmental, and behavioral disabilities. In custody for one year at the time of the complaint, J.S. initially received a foster home placement but was returned to his mother briefly. His mother placed him back in state custody because the state provided no in-home support and stopped paying for his medication. J.S. resided in a foster home at the time of the complaint. By the 1995 stipulation, the state had appointed a surrogate parent and treatment guardian and, by 1996, placed J.S. in a state foster home which provided services such as psychological and medical treatment. Plaintiffs allege a violation of the ADA and Rehabilitation Act because J.S. did not receive adequate in-home services. They further claim that defendants violated the Medicaid Act by failing to inform J.S. of the availability of Medicaid screening and not administering entitled tests. Finally, defendants allegedly violated J.S.’s right to family integrity because they made no reasonable attempt to return him to his home.
III. Eleventh Amendment
Defendants assert, for the first time on appeal, Eleventh Amendment immunity from this federal court suit. Because of its jurisdictional- nature, defendants may raise this ’defense at any stage of the proceedings. See Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1231 (10th Cir.1999); 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d, § 3524 (2d ed. 1984 & Supp.1998). We must address this jurisdictional question to determine whether we can reach the class certification and abstention issues.
“The Eleventh Amendment generally bars suits against a state in federal court commenced by citizens of that state or, citizens of another state.” Elephant Butte Irrigation Dist. of N.M. v. Department of the Interior, 160 F.3d 602, 607 (10th Cir.) (citing Hans v. Louisiana, 134 U.S. 1, 13-15, 10 S.Ct. 504, 33 L.Ed. 842 (1890)), cert. denied sub nom. Salisbury v. Elephant Butte Irrigation Dist. of N.M., — U.S. —, 119 S.Ct. 1255, 143 L.Ed.2d 352 (1999). However, three primary methods exist “for circumventing the Eleventh Amendment and allowing federal courts to ensure state compliance with federal laws.” Erwin Chemerinsky, Federal Jurisdiction *1286 389 (3d ed.1999); see also Elephant Butte, 160 F.3d at 607; ANR Pipeline Co. v. Lafaver, 150 F.3d 1178, 1187-88 (10th Cir.), cert. denied, — U.S. —, 119 S.Ct. 904, 142 L.Ed.2d 902 (1999). First, a state may consent to the action. See, e.g., Elephant Butte, 160 F.3d at 607; ANR Pipeline, 150 F.3d at 1188. Second, “Congress may clearly and expressly abrogate the states’ immunity.” Elephant Butte, 160 F.3d at 607; see also, e.g., ANR Pipeline, 150 F.3d at 1188. Third, a party may sue a state official pursuant to Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). See Elephant Butte, 160 F.3d at 607. Under the Ex Parte Young doctrine, “the Eleventh Amendment generally does not bar a suit against a state official in federal court which seeks only prospective equitable relief for violations of federal law, even if the state is immune.” Id. at 607-08- (citing Ex parte Young, 209 U.S. at 159-60, 28 S.Ct. 441). Thus, because plaintiffs in this case name state officers as defendants and seek only prospective injunctive relief, it seems to fit squarely within- the traditional application of Ex parte Young.
The defendants, however, argue that the Supreme Court in Idaho v. Coeur d’Alene Tribe of Idaho, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), limited the application of Ex parte Young and recognized the appropriateness of Eleventh Amendment immunity in this type of case. In Coeur d’Alene Tribe, the Court found that the Eleventh Amendment barred the tribe’s action seeking declaratory judgment and prospective injunctive relief to establish its ownership and control over submerged lands that lie within the 1873 boundaries of the reservation. See Coeur d’Alene Tribe, 521 U.S. at 264-65, 286-88, 117 S.Ct. 2028. The majority found that the requested relief “is the functional equivalent of a quiet title action which implicates special sovereignty interests.” Id. at 281, 117 S.Ct. 2028. In examining the significance of Coeur d’Alene Tribe, we recently explained:
After cataloguing the deep historical roots, and the legal importance, of state regulatory control over, and public ownership of, streams and lakes, the Court ruled that the Ex parte Young doctrine may not be used to support prospective federal court injunctive relief against state officials when that relief is just as much an intrusion on state sovereignty as an award of money damages[.]
ANR Pipeline, 150 F.3d at 1190 (citing Coeur d’Alene Tribe, 521 U.S. at 286-87, 117 S.Ct. 2028). Therefore, Coeur d’Alene Tribe imposes an important additional requirement. “We must examine whether the relief Plaintiffs seek against the state officials ‘implicates special sovereignty interests,’ and ‘whether that requested relief is the functional equivalent to a form of legal relief against the state that would otherwise be barred by the Eleventh Amendment.’ ” Elephant Butte, 160 F.3d at 609 (quoting ANR Pipeline, 150 F.3d at 1190).
We have noted that the result in Coeur d’Alene Tribe “reflects the extreme and unusual case in which, although the doctrine of Ex parte Young under traditional principles is applicable, the suit is prohibited because it involves ‘particular and special circumstances’ that affect ‘special sovereignty interests’ and cause ‘offense to [the state’s] sovereign authority.’ ” Id. at 612 (quoting Coeur d’Alene Tribe, 521 U.S. at 281-82, 287, 117 S.Ct. 2028). Our conclusion that Coeur d’Alene Tribe imposes a narrow limitation on Ex parte Young is reinforced by the fact that seven Justices rejected a reformulation of the Eleventh Amendment doctrine that would have sharply limited Ex parte Young. See Coeur d’Alene Tribe, 521 U.S. at 291-92, 117 S.Ct. 2028 (O’Connor, J., concurring in part and concurring in the judgment); id. at 297-98, 117 S.Ct. 2028 (Souter, J., dissenting). Our recent decision in ANR Pipeline reflects the limited scope of the additional Coeur d’Alene Tribe factors. In that case, we held that the power to assess and levy personal property taxes on land *1287 within the state of Kansas constituted a special sovereignty interest. See ANR Pipeline Co., 150 F.3d at 1190-94. After declaring that “a state’s sovereign power to tax its citizens has been a hallmark of the western legal tradition,” id. at 1193 n. 16, and that “Congress has made it clear in no uncertain terms that a state has a special and fundamental interest in' its tax collection system,” id. at 1193, we stated: “We do not doubt, therefore, that a state’s interests in the integrity of its property tax system lie at the core of the state’s sovereignty. Indeed, ... it is impossible to imagine that a state government could continue to exist without the power to tax,” id.
 In the instant case, no comparable special sovereignty interests are at stake.[3] A state’s interest in administering a welfare program at least partially funded by the federal government is not such a core sovereign interest as to preclude the application of Ex parte Young. See Doe v. Chiles, 136 F.3d 709, 720 (11th Cir.1998) (asserting, without addressing special sovereignty interest’ requirement, that case in which developmentally disabled individuals brought § 1983 action against officials for failure to furnish Medicaid assistance with reasonable promptness “fit neatly within the Ex parte Young exception”); Marie O. v. Edgar, 131 F.3d 610, 616-17 & n. 13 (7th Cir.1997) (finding no important sovereignty interests such as those at issue in Coeur d’Alene Tribe in suit brought by infants with disabilities against state officials alleging that state did not comply with early intervention requirements of IDEA and seeking to enforce compliance with the federal program under which the officials had accepted funds); cf. Elephant Butte, 160 F.3d at 612-13 (holding state’s property interest in right to profits from a recreational land lease did not rise to the level of a “special sovereignty interest”). Additionally, a challenge to the administration of a welfare program is not the equivalent of a suit for money damages, nor does it strike at a state’s fundamental power, such as the power to tax. Cf. ANR Pipeline, 150 F.3d at 1193.
Because we find that the present suit does not impinge upon the sort of special sovereignty interest contemplated by the Supreme Court in Coeur d’Alene Tribe, we hold that the Ex parte Young doctrine precludes defendants’ Eleventh Amendment immunity defense. Furthermore, as the Eleventh Amendment poses ho bar to any claim in this action, we need not address whether the ADA, Section 504 of the Rehabilitation Act, and/or the IDEA contain valid statutory abrogations of Eleventh Amendment immunity under § 5 of the Fourteenth Amendment.
IV. Class Certification
As we have jurisdiction to hear this suit, we must next address class certification. “The decision to grant or deny certification of a class belongs within the discretion of the trial court. We will not interfere with that discretion unless it is abused. There is no abuse of discretion when the trial court applies the correct criteria to the facts of the case.” Reed v. Bowen, 849 F.2d 1307, 1309 (10th Cir.1988) (internal citations and quotation marks omitted); see also, e.g., Boughton v. Cotter Corp., 65 F.3d 823, 826 (10th Cir.1995). After carefully reviewing the record and the district court’s opinion, we hold the district court did not abuse its discretion in denying class certification.
Plaintiffs in this case sought to certify a class composed of “all 'children who are now or in the future will be (a) in or at risk of State custody and (b) determined by defendants and/or their agents to have any form of mental and/or developmental disability for which they require some kind of therapeutic services or support.” Appellants’ App., Vol. 2, at 226. The trial court may certify a class only if, after rigorous analysis, it determines that the proposed class satisfies the prerequisites *1288 of Federal Rule of Civil Procedure 23(a). See General Tel. Co. v. Falcon, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); Reed, 849 F.2d at 1309. Rule 23(a) imposes four prerequisites for class certification:
(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
In addition, those seeking declaratory or injunctive relief must meet the requirements of Rule 23(b)(2), which states that “the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.” Fed.R.Civ.P. 23(b)(2).
The district court in this ease found plaintiffs had failed to meet the Rule 23(a) requirements for commonality and typicality. Plaintiffs contest the validity of the district court’s reasoning and conclusions regarding those class action prerequisites.
As the district court observed, “commonality 'requires only a single issue common to the class.’ ” K.L. v. Valdez, 167 F.R.D. 688, 690 (D.N.M.1996) (citing Newberg & Conte, supra, at § 3.12); see also In re American Med. Sys., Inc., 75 F.3d 1069, 1080 (6th Cir.1996); Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir.1994). Thus, “[t]he commonality requirement is met if plaintiffs’ grievances share a common question of law or of fact.” Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997); see also Newberg & Conte, supra, at § 3.10. Further, “[t]hat the claims of individual class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy.” Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir.1988); see also Milonas v. Williams, 691 F.2d 931, 939 (10th Cir.1982).[4]
The diverse situations' of the named plaintiffs show there is no question of fact common to the class. Even plaintiffs note:
These children come into the custody of the state in a variety of ways. Most are taken out of their natural homes by the Department of Children, Youth and Families (CYFD) because of abuse and neglect determinations. These children then are placed in foster homes, residential treatment centers, group homes, temporary shelters, or psychiatric hospitals. Some children are taken into the custody of the State through the juvenile corrections system and they are placed in the Boys School or Girls School, the Youth Diagnostic and Development Center, the Sequoyah diagnostic and treatment facility, or sometimes, in psychiatric hospitals.
Appellants’ App., Vol. 2, at 230-31. Thus, the ways in which these children come into *1289 state custody as well as their particular placements once in custody differ drastically. For example, the state took J.B., R.E., C.E., J.E., and E.E. into custody because of parental abuse or neglect. In contrast, some children in the proposed class entered state custody after conviction of a criminal offense. R.W., a named plaintiff before the district court but who did not appeal from the denial of class certification, illustrates this; he entered state custody as a convicted sex offender. The complaint does not even note why Y.A., D.A., E.A., F.A., V.C., C.C., and J.S. became wards of New Mexico. Similarly, some children have resided primarily in residential treatment centers and boys’ schools, while others have stayed with foster families and parents during the course of state custody. Many have moved frequently among the various living arrangements and programs in the state of New Mexico.
Hence, as these examples and the factual background provided above demonstrate, the circumstances of these children vary greatly. Other than all being disabled in some way and having had some sort of contact with New Mexico’s child welfare system, no common factual link joins these plaintiffs. We cannot say that the district court abused its discretion in finding no factual commonality in the proposed class.
We also affirm the district court’s finding of no common question of law. The court concluded that “there is no-one statutory or constitutional claim common to all named Plaintiffs and all putative class members.” K.L., 167 F.R.D. at 691. Plaintiffs respond that the common claim is “that systemic failures in the defendants’ child welfare delivery system deny all members of the class access to legally-mandated services which plaintiffs need because of their disabilities.” Appellants’ Br. at 25. We refuse to read am allegation of systematic failures as a moniker for meeting the class action requirements. Rule 23(a) requires a common question of law or fact. For a common question of law to exist, the putative class must share a discrete legal question of some kind. For example, in Wilder v. Bernstein, a class action child welfare case on which plaintiffs rely, the plaintiffs, black Protestant children, ■ challenged New York’s law for providing child welfare services as unconstitutionally discriminatory. See 499 F.Supp. 980, 982 (S.D.N.Y.1980). All class members claimed the system denied them placements, because of their race and religion. See id. Here, rather than adequately advancing a discrete question of law, plaintiffs merely attempt to broadly conflate a -variety of claims to establish commonality via an allegation of “systematic failures.” We refuse to hold, as a matter of law, that any allegation of a systematic violation of various laws automatically meets Rule 23(a)(2).' The district court retains discretion to determine commonality because it is “in the best position to determine the.facts of the case, to appreciate the consequences of alternative methods of resolving the issues of the case and ... to select the most efficient method for their resolution.” Boughton, 65 F.3d at 825. Given the complex facts and legal issues involved in this case, we cannot say the district court abused its discretion when it refused to characterize plaintiffs’ claims as a systematic violation.[5]
Plaintiffs do • not rely solely on their “systematic” theory of commonality, however. They contend that, at the very least, all putative class members suffer, or will suffer, violations of the Medicaid Act, the ADA, and the Rehabilitation Act. We have closely reviewed plaintiffs’ second amended complaint in an effort to match legal claims with each plaintiff.[6] This proved *1290 difficult because the complaint fails to specifically tie the particular allegations with individual children. Instead, it states the' factual circumstances of each child and then, in very general terms, alleges violations of the ADA, Rehabilitation Act, Title XIX of the Social Security Act (Medicaid Act), IDEA, and the Fourteenth Amendment. When feasible, and with help from the district court’s order of dismissal from which neither party appealed, we have paired the alleged violations under each claim with the recited facts of the individual children in an effort to review the district court’s failure to find commonality.[7]
Our work reveals no common allegation of a Medicaid Act violation for all named plaintiffs. Similarly, only a few of the named plaintiffs asserted claims under the IDEA and the Fourteenth Amendment. As for the ADA and Rehabilitation Act claims, all named plaintiffs appear to have asserted that defendants denied them benefits, services, or adequate care because of their disabilities. Even if this were sufficient to establish a common legal question as to the named plaintiffs, plaintiffs have not shown that it is common to all putative class members under their proposed class definition. Plaintiffs sought to certify a class of all children in state custody who “have any form of mental and/or developmental disability for which they require some kind of therapeutic services or support.” Appellants’ App., Vol. 2, at 226. This broad definition would include not just children whom New Mexico improperly denied assistance, but also children who actually receive all services required under the ADA and Rehabilitation Act. Children receiving appropriate services have no claim under these statutes. Thus, the district court correctly stated that “there is no one statutory or constitutional claim common to all named Plaintiffs and putative class members.” K.L., 167 F.R.D. at 691.
In sum', given the divergent circumstances, legal claims, and corresponding remedy for each child, we hold that the district court did not abuse its discretion in failing to find a single issue of law or fact common to all class members. Because we find no abuse of discretion regarding commonality, we need not reach the district court’s finding on typicality.
Our affirmance of the denial of class certification requires us to rule on the continuing viability of plaintiffs’ individual claims. As noted previously, K.L., M.H., R.W., and A.S. are not parties to this appeal. Moreover, we grant defendants’ motions to dismiss J.B., Y.A., D.A., E.A., F.A., V.C., C.C., R.E., and J.E. because they have reached the age of majority or otherwise fallen outside of state custody and their claims are now moot. It appears that only C.E., E.E., and J.S. continue to have viable individual claims. Thus, we must determine whether the district court erred in granting New Mexico’s motion for abstention as to these parties.
V. Abstention
The district court, upon reconsideration, abstained from deciding Plaintiffs claims based on Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and Moore v. Sims, 442 U.S. 415, *1291 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). We review the appropriateness of Younger abstention de novo. See Taylor v. Jaquez, 126 F.3d 1294, 1296 (10th Cir.1997); Seneca-Cayuga Tribe v. Oklahoma, 874 F.2d 709, 711 (10th Cir.1989).
Although federal courts have a “virtually unflagging obligation” to exercise jurisdiction granted them, see Deakins v. Monaghan, 484 U.S. 193, 203, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)); Seneca-Cayuga Tribe, 874 F.2d at 711, they must on rare occasions abstain from exercising their jurisdiction in order to “avoid undue interference with states’ conduct of their own affairs,” Seneca-Cayuga Tribe, 874 F.2d at 711. In Younger, the Supreme Court held that a federal court should not enjoin a pending state criminal proceeding unless an injunction is necessary to prevent great and immediate irreparable injury. See 401 U.S. at 43-45, 91 S.Ct. 746. This decision rested on “a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances.” Middlesex County Ethics Comm. v. Garden State Bar Ass’n, 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Later cases have expanded Younger abstention principles to civil proceedings in which important state interests are involved, see, e.g., Moore v. Sims, 442 U.S. 415, 423, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), and to administrative proceedings that are judicial in nature and involve important state interests, see Ohio Civil Rights Comm’n v. Dayton Christian Schs., Inc., 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); Middlesex County, 457 U.S. at 432, 102 S.Ct. 2515.
The Younger doctrine, as developed, requires abstention when federal proceedings would (1) interfere with an ongoing state judicial proceeding (2) that implicates important state interests and (3) that affords an adequate opportunity to raise the federal claims. See, e.g., Middlesex County, 457 U.S. at 432, 102 S.Ct. 2515; Taylor, 126 F.3d at 1297; Seneca-Cayuga Tribe, 874 F.2d at 711. A case warrants Younger abstention only if each of these three criteria are satisfied. However, “Younger abstention is not discretionary once the above conditions are met absent extraordinary circumstances that render a state court unable to give state litigants a full and fair hearing on their federal claims.” Seneca-Cayuga Tribe, 874 F.2d at 711 (internal citations omitted).
In this case, neither party disputes that the state has an important interest in the care, disposition, and welfare of disabled children in its custody. Instead, the parties’ dispute revolves around whether there is an ongoing state judicial proceeding in which the plaintiffs had an adequate opportunity to raise their federal claims.
Plaintiffs acknowledge that C.E., E.E., and J.S., as children in the custody of the state, are or were subject to dispositional and biannual review hearings before the New Mexico Children’s Court. These proceedings, while admittedly less than full adversarial hearings, are judicial in nature. Moreover, they exist as long as the child remains in state custody, so they are ongoing. We hold that the continuing jurisdiction of the Children’s Court to modify a child’s disposition, see N.M. Stat. Ann. § 32A-4-24 (Michie 1978 & Supp.1998), coupled with the mandatory six-month periodic review hearings, see id. § 32A-4-25, constitutes an ongoing state judicial proceeding. See Nelson v. Murphy, 44 F.3d 497, 501-02 (7th Cir.1995) (finding continuing criminal court supervision of persons found not guilty by reason of insanity, which includes mandatory review of treatment plan every sixty days, is an ongoing proceeding for Younger analysis).
Moreover, plaintiffs’ federal action would interfere with this proceeding by fundamentally changing the dispositions and oversight of the children. The federal court would, in effect, assume an oversight role over the entire state program for *1292 children with disabilities. This places the federal court in the role of making disposi-tional decisions such as whether to return the child to his parents in conjunction with state assistance or whether to modify a treatment plan. These are the kind of decisions currently made by the New Mexico Children’s Court through the periodic review process. See, e.g., N.M. Stat. Ann. §§ 32A-4-25(H)(2), (6) (Michie Supp.1998). The current suit would prevent the Children’s Court from carrying out this function. But see Marisol A. v. Giuliani, 929 F.Supp. 662, 689 (S.D.N.Y.1996) (finding class action seeking systematic reform of child welfare program would not “improperly challengfe] a state court proceeding through the federal courts”); Norman v. Johnson, 739 F.Supp. 1182, 1189-90 (N.D.Ill.1990) (finding class action challenging child welfare system did not interfere with ongoing proceeding).
While we find plaintiffs were engaged in an ongoing state proceeding, we are less certain about whether they could have adequately raised their federal statutory and constitutional claims in these state proceedings. This uncertainty, however, militates in favor of abstention. Even though plaintiffs have not raised their federal claims below, the “pertinent issue is whether appellees’ [federal] claims could have been raised in the pending state proceedings.” Moore, 442 U.S. at 425, 99 S.Ct. 2371 (emphasis added). Plaintiffs bear the burden of proving that state procedural law barred presentation of their claims in the New Mexico Children’s Court. See Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 14-15, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); Moore, 442 U.S. at 432, 99 S.Ct. 2371. “Certainly, abstention is appropriate unless state law clearly bars the interposition of the [federal statutory] and constitutional claims.” Moore, 442 U.S. at 425-26, 99 S.Ct. 2371. In this case, plaintiffs have failed to clearly show that they could not have raised their claims during the periodic review proceedings.
Plaintiffs argue that the “New Mexico Children’s Court is a court of limited jurisdiction which can hear only matters arising under the Children’s Code.” Appellants’ Br. at 43. However, even assuming that the Children’s Court “is only permitted to do what is specifically authorized by the statute,” In re Angela R., 105 .N.M. 133, 729 P.2d 1387, 1391 (Ct.App.1986); accord State v. Adam M., 124 N.M. 505, 953 P.2d 40, 45 (Ct.App.1997), plaintiffs fail to clearly show that the Children’s Court could not have adjudicated these federal claims during the periodic review process. The New Mexico Children’s Code specifically provides for the periodic review of disposi-tional judgments in the Children’s Court. See N.M. Stat. Ann. § 32A-4-25. Under this provision, the court may “make ... orders regarding the treatment plan or placement of the child to protect the child’s best interests if the court determines the department has failed in implementing any material provision of the treatment plan or abused its discretion in the placement or proposed placement of the child.” Id. § 32A-4-25(H)(6). Thus, the Children’s Code seemingly grants the Children’s Court wide power to determine the needs and claims of children during the periodic review proceeding.[8]
Furthermore, the Children’s Court constitutes a division of the state district court, with a designated district judge presiding. See id. § 32A-1-5(A). Defendants argue that the Children’s Court has the full constitutional powers of the district court, a court of general jurisdiction. If this is the case, the Children’s Court may hear plaintiffs’ claims. The answer to this question is uncertain, but, as the Supreme Court stated in Pennzoil:
We cannot assume that state judges will interpret ambiguities in state procedural law. to bar presentation of federal claims. Accordingly, when a litigant has not attempted to present his federal claims in related state-court proceedings, a feder *1293 al court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.
481 U.S. at 15, 107 S.Ct. 1519 (internal citations omitted).
We find no “unambiguous authority to the contrary” that informs us the New Mexico Children’s Court lacks the jurisdiction or ability to adjudicate federal statutory and constitutional claims during authorized periodic review proceedings. In this sense, the case before us differs from other cases in which federal courts have refused to abstain. For example, in LaShawn A. v. Kelly, 990 F.2d 1319 (D.C.Cir.1993), the court based its decision not to abstain in a child welfare class action on the fact that the District of Columbia Family Division “has explicitly rejected the use of review hearings to adjudge claims requesting broad-based injunctive relief based on federal law.” Id. at 1323. Similarly, in Baby Neal v. Casey, 821 F.Supp. 320, 332 (E.D.Pa.1993), rev’d on other grounds, 43 F.3d 48 (3d Cir.1994), the district court denied abstention in a child welfare case against state officials because' state law did not give the Philadelphia Family Court jurisdiction to hear cases against the Commonwealth. See id. at 332. We hold, therefore, that plaintiffs failed to prove that they could not have brought this action during the periodic review proceedings for these children. Thus, the third and final prong of the Younger inquiry is met. Accordingly, we affirm the district court’s decision to abstain from hearing the individual claims in this case.[9]
V. Conclusion
The Eleventh Amendment does not bar our review of this case. We AFFIRM the district court’s denial of class certification and GRANT the defendants’ motion to dismiss J.B., Y.A., D.A., E.A., F.A., V.C., C.C., R.E., and J.E. We also AFFIRM the district court’s order abstaining from hearing the individual claims of C.E., E.E., and J.S. Finally, we DENY defendants’ motion to strike portions of the appendix and appellants’ brief-in-chief and GRANT, in part, their motion to revise the caption. AFFIRMED.

. The district court entered judgment on C.E., J.E., E.E., J.S., Y.A., D.A., E.A., F.A., V.C., C.C., R.E., and J.B. pursuant to Fed.R.Civ.P. 54(b), finding no just reason for delay in this case. The district court did not, however, make any mention of K.L. or M.H., and the parties agree that they are not parties to this appeal. The court also did not enter judgment on A.S. and R.W.'s claims because it did not abstain from hearing their individual cases as it did the others. R.W.'s case is now moot, and he has not appealed. Furthermore, we denied the motion of A.S. to consolidate his appeal with the current one, and his claims have since become moot. Therefore, neither R.W. nor A.S. are parties to this appeal.

. Plaintiffs sued the officers in their official capacities. Those named in plaintiffs' second amended complaint include: the Governor; Secretary of the New Mexico Department of Health; Secretary of the New Mexico Human Services Department; Secretary of the New Mexico Children, Youth and Families Department; State Superintendent of Public Instruction; President of the State Board of Education; Vice President of the State Board of Education; Secretary of the State Board of Education; and members of the State Board of Education.

. Defendants only fleetingly mention that this lawsuit affects the state's sovereignty to administer its various child welfare programs and provide no argument or reasoning why this interest should enjoy special status.

. The district court in this case correctly set forth these principles, but it concluded by holding, “In the present matter, the Court finds that the members of the proposed class do not satisfy the prerequisite of commonality because they are insufficiently subject to the risk that they may suffer from all of Defendants' alleged Violations.” K.L., 167 F.R.D. at 693. Plaintiffs claim this shows the court applied an improper heightened standard requiring the class to have commonality on all legal claims.
Although imprecise, the above statement, in light of the entire opinion, does not support the allegation that the judge applied the wrong legal standard to support his decision. Thus, this phrase alone does not warrant reversal. Instead, we interpret this statement to simply reiterate the court’s earlier finding:
that there is no one statutory or constitutional claim common to all named Plaintiffs and putative class members. Rather, each statutory and constitutional claim is common to an imprecisely defined subset of some named Plaintiffs and some putative class members. Thus, there can be no one legal theory or factual issue common to all Plaintiffs and all putative class members. Nor can the claims of the class representatives and the class members be based on the same legal or remedial theory.
K.L., 167 F.R.D. at 691 (citations omitted). Therefore, the district court applied the correct legal standards to the facts of this case.

. We recognize that this conclusion differs from that reached by the Third Circuit in a similar case. See Baby Neal v. Casey, 43 F.3d 48, 60-62 (3d Cir.1994).

. Plaintiffs informed the district court that they intended for the court to integrate the first stipulation, filed on May 19, 1995, into the complaint. See Appellees’ Supp.App. at 13. We have treated the stipulation as supplementing the facts in the complaint. We *1290 did not, however, rely on the updated status of the children in the second stipulation, entered by court order in May 1996, when that status would have the effect of mooting a claim from the complaint. See Reed v. Heckler, 756 F.2d 779, 786 (10th Cir.1985) (holding purposeful action of defendants in giving plaintiffs what they seek may not make moot plaintiffs claim in a class action).

. We recognize that, when deciding a motion for class certification, the district court should accept the allegations contained in the complaint as true. See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 691 F.2d 1335, 1342 (9th Cir.1982); Shelter Realty Corp. v. Allied Maintenance Corp., 574 F.2d 656, 661 n. 15 (2d Cir.1978); Newberg & Conte, supra, at § 7.26. However, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements [and] may ... consider the legal and factual issues presented by plaintiff's complaints.” Newberg & Conte, supra, at § 7.26 (citing cases).

. In addition, the Children's Court can modify dispositional judgments at any time on motion of a party or the child’s guardian ad litem. See id. § 32A-4-24.

. The dissent asserts: "[T]he majority in essence assumes Younger precludes the coexistence of federal and state suits involving abused or neglected children in the custody of the State of New Mexico. This sweepingly broad rule would bar any abused or neglected child in State custody from obtaining federal court access to vindicate violations of federal constitutional and statutory rights.” Infra, at -. We make no such assumption or ruling. We merely hold that on this record, plaintiffs have failed to demonstrate that the Children's Court cannot hear their federal statutory and constitutional claims. We do not preclude federal courts from hearing cases such as these if the Children’s Court, when presented with the controversy, states that it cannot or will not adjudicate the claims. If that occurs, we would face the situation confronted by our sister circuit in LaShawn A., 990 F.2d at 1323.