**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 16 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BEN LEWIS; AARON NORRID; BILLY
JO QUISENBERRY; ARC OF NEW
MEXICO, as legal guardian and next
friend of Fred Romero; JUDY LIDDELL,
as parent and legal guardian of Breanne
Liddell; JIM ALLEN, as parent and legal
guardian of Matthew Allen; ANGELA
ALLEN, as parent and legal guardian of
Matthew Allen; FAYE MORGAN;
DEBORAH EMINGER; PROTECTION &
ADVOCACY SYSTEM,

        Plaintiffs - Appellees,

    v.

NEW MEXICO DEPARTMENT OF
HEALTH; NEW MEXICO
DEPARTMENT OF HUMAN SERVICES;
J. ALEX VALDEZ, Secretary of the
Department of Health and Secretary
Designee of the Department of Human
Services in his official capacities; GARY
JOHNSON, Governor, in his official
capacity,

        Defendants - Appellants.

No. 00-2154

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D. Ct. No. CIV-99-21-MV)**

---

Kurt Wihl, Keleher & McLeod, P.A., Albuquerque, New Mexico (Robyn Hoffman, General Counsel, Barbara Glenn, Assistant General Counsel, Office of the General Counsel, New Mexico Department of Health, Santa Fe, New Mexico, and Charles A. Pharris and Gary J. Van Luchene, Keleher & McLeod, P.A., Albuquerque, New Mexico, with him on the briefs), for Appellant.

Maureen A. Sanders, Sanders & Westbrook, P.C., Albuquerque, New Mexico (Duff Westbrook, Sanders & Westbrook, P.C., Albuquerque, New Mexico, and V. Colleen Miller, Michael C. Parks, and Sandra L. Gomez, Protection & Advocacy, Inc., Albuquerque, New Mexico, with her on the brief), for Appellee.

---

Before **TACHA**, Chief Judge, **POLITZ**,[*] and **LUCERO**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

---

The defendants appeal the district court's denial of their motions to dismiss based on Eleventh Amendment immunity and Federal Rule of Civil Procedure 12(b)(6). Pursuant to the collateral order doctrine, we have jurisdiction under 28 U.S.C. § 1291 to review the district court's denial of the defendants' motion asserting Eleventh Amendment immunity, see Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146-47 (1993), and we affirm the district court's denial of the motion. We decline, however, to exercise pendent appellate jurisdiction over the district court's denial of the defendants' 12(b)(6) motions.

---

[*]Honorable Henry A. Politz, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

## I. Background

Medicaid is a cooperative federal-state program under which states choosing to participate receive federal funds for state-administered Medicaid services provided they comply with the requirements of the Medicaid Act, 42 U.S.C. §§ 1396 et seq., and its implementing regulations, 42 C.F.R. §§ 430 et. seq. Under the Medicaid Act, a participating state may ask the Secretary of Health and Human Services to provide a waiver allowing the state to pay for home or community-based services as "medical assistance" under its approved Medicaid plan. 42 U.S.C. § 1396n(c). New Mexico has chosen to participate in Medicaid and has received a waiver from the Secretary allowing for the inclusion of two "waiver services" in its plan: the Developmental Disabilities Home and Community-Based Services Waiver and the Disabled and Elderly Home and Community-Based Services Waiver.

In addition to an advocacy group called Protection and Advocacy, the initial plaintiffs in this case were individuals who claimed they were eligible for Medicaid services because of their physical or developmental disabilities or because of their advanced age.[1] After applying for waiver services under New

---

[1] Since the district court issued its decision, some of the individually named plaintiffs in this case have received the waiver services for which they applied. Others have unfortunately passed away. At this stage, none of these plaintiffs remains a party in this case, leaving only the advocacy group. The

(continued...)

Mexico's Medicaid plan, the plaintiffs were placed on waiting lists for as many as seven years. The plaintiffs argue that the state must provide the waiver services to which they are entitled "with reasonable promptness" as required by 42 U.S.C. § 1396a(a)(8). Alleging violations under both the Medicaid Act and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 1201 et. seq., as well as due process violations actionable under 42 U.S.C. § 1983, the plaintiffs brought suit against two state agencies, the New Mexico Department of Health and the New Mexico Department of Human Services. In addition, the plaintiffs sued Alex Valdez in his official capacity as both Secretary of the Department of Health and Secretary-Designee of the Department of Human Services, as well as Governor Gary Johnson in his official capacity as Governor of New Mexico. The plaintiffs seek a declaration that the defendants' current administration of the waiver services violates federal law and injunctive relief ordering the defendants to comply with the Medicaid Act by providing waiver services with "reasonable

---

[1](...continued)
defendants do not, however, raise this issue. Although we would typically consider the issue sua sponte, see Qwest Communications Int'l, Inc. v. Fed. Communications Comm'n, 240 F.3d 886, 891 (10th Cir. 2001), we decline to do so because of the procedural posture of this case. As several of our sister circuits have recognized, the issue of standing does not meet all the elements of the collateral order doctrine because it is not effectively unreviewable on appeal from a final judgment. See, e.g., Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1334 (11th Cir. 1999) (citing cases from other circuits). We therefore express no opinion concerning the advocacy group's standing to bring this suit.

promptness."

The plaintiffs also initially sought injunctive relief under the ADA, requesting that the state agencies provide them with services in the most integrated setting appropriate to their needs. Since the district court issued its order, however, the plaintiffs have voluntarily dismissed their ADA claim, leaving only their § 1983 claims alleging violations of their federal rights under the Medicaid Act and the Constitution. Accordingly, the only remaining defendants are the two individuals named in their official capacities, narrowing our inquiry concerning Eleventh Amendment immunity to whether the plaintiffs' claims fall within the Ex parte Young doctrine, which allows plaintiffs to seek prospective equitable relief for violations of federal law by state officials. We conclude Ex parte Young applies and affirm the district court's denial of the defendants' motion to dismiss based on Eleventh Amendment immunity.

## II. Standard of Review

Because an assertion of Eleventh Amendment immunity involves questions of law, we review the district court's decision de novo. See Powder River Basin Res. Council v. Babbitt, 54 F.3d 1477, 1483 (10th Cir. 1995); see also Dang v. UNUM Life Ins. Co., 175 F.3d 1186, 1189 (10th Cir. 1999) (recognizing that appellate court reviews questions of law de novo).

## III. Eleventh Amendment Immunity

Although citizens may not generally sue states in federal court under the Eleventh Amendment, the Ex parte Young doctrine has carved out an alternative, permitting citizens to seek prospective equitable relief for violations of federal law committed by state officials in their official capacities. Ex parte Young, 209 U.S. 123, 159-60 (1908). In Elephant Butte Irrigation District of New Mexico v. Department of the Interior, 160 F.3d 602 (10th Cir. 1998), we discussed at length the Ex parte Young doctrine and the federal courts' struggle to define it. In addition, we specifically outlined the four-part inquiry required by Supreme Court precedent, particularly Idaho v. Coeur d'Alene Tribe, 521 U.S. 261 (1997), and Florida v. Treasure Salvors, Inc., 458 U.S. 670 (1982). See Elephant Butte Irrigation Dist., 160 F.3d at 609. In order to conclude that the plaintiffs in this case may proceed against the defendant state officials, we must find that the following four requirements are met: (1) the plaintiffs are suing state officials, rather than the state itself; (2) the plaintiffs have alleged a non-frivolous violation of federal law; (3) the plaintiffs seek prospective equitable relief, rather than retroactive monetary relief from the state treasury; and (4) the suit does not implicate "special sovereignty interests." Id. After addressing each of these elements, we conclude the plaintiffs' claims meet the requirements of the Ex parte Young doctrine, and the defendants are therefore not immune from suit under the Eleventh Amendment.

A.    Alleging a suit against state officials

The Ex parte Young doctrine allows plaintiffs to sue state officials even if they claim to be acting under valid state law because, if the officials' conduct constitutes an ongoing violation of federal law, the state "cannot cloak their actions with state authority or state immunity." Id. That is, when state officials are arguably violating federal law, "[t]he state is not the real party in interest because the state cannot 'authorize' the officials to violate federal law." Id. at 610. Hence, in allegedly violating federal law, the officials are stripped of their state authority and the Eleventh Amendment will not protect them from suit. In the case before us, the defendants are two state officials exercising considerable control over the implementation and administration of the waiver services under New Mexico's Medicaid plan. The plaintiffs claim these officials, acting pursuant to state authority, are violating federal law in failing to provide waiver services to eligible individuals with "reasonable promptness." The plaintiffs have, therefore, properly sued state officials, rather than the state itself.

Moreover, we are not persuaded by the defendants' contention that the plaintiffs have failed to bring a permissible suit against state officials because the relief would require that the courts interfere with discretionary, rather than simply ministerial, acts by state officials. We have previously addressed the same argument, noting that "[a]lthough this general premise is sound, Ex parte Young

does not extend this rule to preclude judicial review of discretionary acts that violate federal law." Id. at 611. When plaintiffs establish a non-frivolous violation of federal law, we have held we "will not deny jurisdiction solely on the basis that a ruling might indirectly impact state officials' discretionary acts." Id. The relief sought in the present case requires only that the court order state officials to comply with federal law; because the court would not instruct the defendants in how to use their discretion to comply, any impact on the official exercise of discretion would be indirect.

B.     Alleging a violation of federal law

We must next determine whether the plaintiffs have alleged a non-frivolous claim for relief "that does not merely allege a violation of federal law solely for the purpose of obtaining jurisdiction." Id. at 610 (internal quotation marks omitted). Although this question may rest on the later decision on the merits, we have characterized the two steps as separate, distinct inquires. Id. As the Supreme Court has recognized, a state official must act in violation of federal law and therefore outside any delegated authority in order for plaintiffs to avoid dismissal based on Eleventh Amendment immunity. See, e.g., Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689-90 (1949), cited in Elephant Butte, 160 F.3d at 610. The question of whether state officials violated federal law therefore affects both the initial immunity inquiry and the

court's ultimate decision on the merits.  Id. at 690 & n.10.  At the immunity stage, however, federal courts apply the limited jurisdictional standard used to assess whether a claim sufficiently confers subject matter jurisdiction, asking only whether the claim is "wholly insubstantial and frivolous," rather than reaching the legal merits of the claim.  Id.

Applying this standard, we conclude that the plaintiffs' claims are not "wholly insubstantial and frivolous."  Although the defendants argue that § 1396a(a)(8) fails to create a binding obligation on the state, the language of the statute and implementing regulations discourages the dismissal of the plaintiffs' statutory claim as frivolous.  As in Wilder v. Virginia Hospital Association, 496 U.S. 498 (1990), the statute and implementing regulations at issue here are at least arguably specific enough to create a binding obligation.  See id. at 519-20; see also Sutter v. Artist, 503 U.S. 347, 359 (1992) (noting the Court in Wilder "relied in part on the fact that the statute and regulations set forth in some detail" the relevant factors).  Under § 1396a(a)(8), the state "must" facilitate applications for medical assistance and "shall" furnish such assistance "with reasonable promptness to all eligible individuals."  42 U.S.C. § 1396a(a)(8).  In addition, the regulations require that states adopt time limits within certain parameters for determining eligibility.  42 C.F.R. § 435.911.  Given such specific language, the claim that the statute creates a binding obligation on the states is

not frivolous.

Although the defendants do not raise the argument, we note the more difficult question for resolution on the merits is whether § 1396a(a)(8) creates a federal right directly benefitting the plaintiffs in this case. In order to create a federal right, the statute must reflect Congress's clear intent to benefit directly the particular plaintiffs in this case. See Blessing v. Freestone, 520 U.S. 329, 344-45 (1997). This question turns on whether the plaintiffs may be included as "eligible individuals" under § 1396a(a)(8). Whether "eligible" means eligible for Medicaid or eligible for both Medicaid and waiver services is not entirely clear. But because construing this language involves a more complicated analysis of the Medicaid statutes, the inquiry is more appropriately reserved for resolution on the merits of the case. In light of the statute's ambiguity, the plaintiffs have at least alleged a non-frivolous claim.

Finally, although the plaintiffs allege a deprivation of both substantive and procedural due process rights, we note their argument essentially alleges only a deprivation of procedural due process. They argue that state officials have failed to process their applications for waiver services in the manner required by federal law; they do not, quite wisely, argue that the Medicaid statutes create a substantive property interest in waiver services to which they are entitled. Again, although we will not decide the merits, we do conclude that the plaintiffs'

procedural due process claim survives the Ex parte Young inquiry because it is not wholly insubstantial or frivolous. In fact, a determination of whether the plaintiffs' procedural due process rights have been violated depends on the resolution of the plaintiffs' statutory claim–whether the Medicaid statutes actually create a federal statutory right to the reasonably prompt provision of services.

C.    Seeking permissible prospective equitable relief

Under the third element, we must find that the plaintiffs are seeking prospective equitable relief, rather than retroactive monetary relief. As we have recognized, however, in applying this distinction we ask "not whether the relief will require the payment of state funds, but whether the relief will remedy future rather than past wrongs." Elephant Butte, 160 F.3d at 611 (internal quotation marks omitted). Because the main question is whether the relief will remedy an ongoing wrong rather than whether it will require payment of state funds, courts may grant prospective relief with "a substantial ancillary effect on a state treasury." ANR Pipeline Co. v. Lafaver, 150 F.3d 1178, 1189 (10th Cir. 1998). The plaintiffs in the case before us clearly seek prospective equitable relief: they ask that state officials be compelled to comply with federal statutes that allegedly entitle them to the reasonably prompt provision of waiver services. They are not, for example, asking to be reimbursed for past home or community-based services.

The relief sought simply requires "that officials conform their future actions to federal law," Elephant Butte, 160 F.3d at 611 (internal quotation marks omitted), and any effect on the state treasury is, therefore, "ancillary."

D.     Implicating special sovereignty interests

In response to the Supreme Court's decision in Coeur d'Alene, we recognized: "[I]f we determine the relief Plaintiffs seek, although prospective and not tantamount to a damages award, is an excessive intrusion into an area of special state sovereign interest, Ex parte Young does not apply, and the Eleventh Amendment bars the suit." Elephant Butte, 160 F.3d at 611-12. The defendants argue that the present action invades special sovereignty interests. But we may easily dispense with this argument because, in J.B. ex rel. Hart v. Valdez, 186 F.3d 1280 (10th Cir. 1999), we held that a "state's interest in administering a welfare program at least partially funded by the federal government is not such a core sovereign interest as to preclude the application of Ex parte Young." Id. at 1287. We also noted that a "challenge to the administration of a welfare program is not the equivalent of a suit for money damages, nor does it strike at the state's fundamental power, such as the power to tax." Id. Moreover, one of the claims in Valdez involved an alleged violation of the Medicaid Act, the same statutory scheme at issue in the case before us. Because the plaintiffs in the present case are challenging the administration of New Mexico's Medicaid plan, we conclude

-12-

it is analogous to <u>Valdez</u> and special sovereignty interests are not implicated.

## IV. Pendent Jurisdiction

Because the district court's denial of the defendants' motions to dismiss under Rule 12(b)(6) is not immediately appealable, they urge us to exercise our pendent appellate jurisdiction, arguing that the 12(b)(6) inquiry is "inextricably intertwined" with the second element of the <u>Ex parte Young</u> inquiry, which requires us to determine whether the claim alleges a violation of federal law. We have interpreted the Supreme Court's discussion of pendent jurisdiction in <u>Swint v. Chambers County Commission</u>, 514 U.S. 35 (1995), to permit pendent appellate jurisdiction "only when the otherwise nonappealable decision is 'inextricably intertwined' with the appealable decision, or where review of the nonappealable decision is necessary to ensure meaningful review of the appealable decision." <u>Foote v. Spiegel</u>, 118 F.3d 1416, 1423 (10th Cir. 1997). In order for a nonappealable, or pendent, decision to be inextricably intertwined with an appealable decision, "the pendent claim [must be] coterminous with or subsumed in the properly appealable claim–that is, when resolution of the properly appealable claim necessarily resolves the pendent claim." <u>Id.</u> In addition to recognizing that the discretionary exercise of pendent appellate jurisdiction "is generally disfavored," we have noted that the Supreme Court has discouraged appellate courts from exercising pendent jurisdiction over otherwise

-13-

interlocutory appeals.  Armijo v. Wagon Mound Pub. Sch., 159 F.3d 1253, 1264 (10th Cir. 1998) (internal quotation marks omitted) (citing Swint, 514 U.S. at 50-51).

Despite the interlocutory nature of the defendants' nonappealable claims, they argue that pendent jurisdiction is proper because the 12(b)(6) inquiry is inextricably intertwined with the Ex parte Young inquiry into whether the plaintiffs have alleged a violation of federal law.  As we noted above, the Supreme Court has, however, approached this part of the Ex parte Young doctrine as a question of subject matter jurisdiction, which requires a less demanding standard under which to review plaintiffs' legal claims.  See Larson, 337 U.S. at 689-90.  In addressing the Ex parte Young scenario in which defendant state officials acted beyond their authority in violation of federal law, the Court has used the familiar language of Bell v. Hood, 327 U.S. 678, 682-83 (1946), recognizing a separate jurisdictional standard that requires dismissal only when the claim is "'made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'"  Larson, 337 U.S. at 690 n.10.  In addition, we have also held that once the issue of Eleventh Amendment immunity is raised "such immunity constitutes a bar to the exercise of federal *subject matter jurisdiction*."  Fent v. Ok. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis added).  Consequently, as a kind of exception to Eleventh Amendment

-14-

immunity, the Ex parte Young doctrine is jurisdictional as well.

The Ex parte Young doctrine is therefore governed by precedent that clearly distinguishes the initial jurisdictional inquiry from the 12(b)(6) inquiry. The threshold necessary to sustain jurisdiction is well settled: "Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover . . . ." Bell, 327 U.S. at 682; see also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction . . . ."). Furthermore, our circuit, as well as the Supreme Court, has exercised jurisdiction in cases with similar issues. For example, we have held that "[i]f the applicability of the federal statute upon which a plaintiff relies is genuinely at issue, the federal courts possess jurisdiction and should reach the merits of the claim." Davoll v. Webb, 194 F.3d 1116, 1129 (10th Cir. 1999); see also Steel Co., 523 U.S. at 89 ("[T]he district court has jurisdiction if the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another . . . .").

We have already determined that the plaintiffs in the present case have alleged at least arguable violations of federal law sufficient to allow the suit to

-15-

proceed to the merits.  We need not, however, exercise pendent jurisdiction over the district court's denial of the defendants' motions to dismiss under Rule12(b)(6) because whether the plaintiffs have failed to state a claim upon which relief may be granted is not inextricably intertwined with our jurisdictional analysis under Ex parte Young and the Eleventh Amendment.  Simply stated, Rule 12(b)(6) and the Ex parte Young doctrine are two distinct inquiries requiring the application of different standards.

Accordingly, we AFFIRM the district court's denial of the defendants' motion to dismiss based on Eleventh Amendment immunity and decline to exercise pendent appellate jurisdiction over the remaining portions of the district court's order.