CARDAMONE, Circuit Judge.
In this opinion we are required to examine concepts that have evolved in our jurisprudence since the 1798 ratification of the Eleventh Amendment to the United States Constitution. Contributing to those concepts were, among others, Alexander Hamilton in The Federalist No. 81 (Sesquicentennial ed.), Chief Justice John Marshall in Osborn v. Bank of United States, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824), and a host of scholarly writers, see, e.g., John V. Orth, The Judicial Power of the United States (1987). Examining the broad canvas of this jurisprudence is like looking at an abstract painting whose meaning and significance is not seen by every viewer in the same light. We, of course, are obliged to and do adopt the *369 meaning set out in Supreme Court opinions, as the following discussion illustrates.
Defendants Robert E. Nickel and Ronald B. McCloud, public officials of the Commonwealth of Kentucky (defendants, state officials, or appellants), appeal from an order dated January 23, 2004 of the United States District Court for the Southern District of New York (Wood, J.). The decision affirmed an order dated June 12, 2002 of the United States Bankruptcy Court for the Southern District, which denied defendants’ motion to dismiss an adversary proceeding initiated by debtors Dairy Mart Convenience Stores, Inc. and its affiliated organizations (Dairy Mart or plaintiff). Defendants contend the present action should be dismissed for lack of subject matter and personal jurisdiction because the doctrine of sovereign immunity, as derived from the Eleventh Amendment to the United States Constitution, protects state officials from suit. Dairy Mart urges that the action falls under the exception to sovereign immunity set forth in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). For the reasons stated below, we affirm.
BACKGROUND
On September 24, 2001 plaintiff Dairy Mart filed a petition- for reorganization under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. Plaintiff operated a large chain of convenience stores comprising about 547 stores located in Ohio, Kentucky, Pennsylvania, Michigan, Indiana, and North Carolina. One hundred ninety-three of these convenience stores sold gasoline. Because Dairy Mart owned facilities that stored gasoline in underground tanks, it is subject to the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et seq. (2000) (Resource Recovery Act or Act), which requires such entities to pay for cleanup costs and third-party damage in the event of contamination.
In order to assist owners and operators of underground storage tanks in meeting their responsibilities under the Resource Recovery Act, the Kentucky General Assembly created the Office of Petroleum Storage Tank Environmental Assurance Fund (Office) to administer the Petroleum Storage Tank Environmental Assurance Fund (Fund). The Fund reimburses owners and operators of underground tanks for expenses associated with cleanup actions mandated by the Act. These reimbursements are derived, in part, from assurance fees assessed on fuels imported into the Commonwealth of Kentucky. See Ky.Rev.Stat. Ann. § 224.60-145 (2001). As an importer Dairy Mart pays these fees into the Fund.
Appellants Nickel and McCloud have substantial responsibilities within the Office. Nickel is the Office’s executive director and has responsibility for the overall management of the Fund’s operations, including final authority over claim acceptances or rejections. McCloud is the Secretary of the Public Protection and Regulation Cabinet for the Commonwealth of Kentucky and oversees agencies within the Cabinet, including the Office.
Once a qualified entity incurs cleanup costs under the Act, it must file an application for reimbursement with the Office, which then determines whether the application will be approved on the basis of numerous regulatory qualifications. These include, among others, whether: (1) the claimant is eligible under the program, (2) the contamination occurred at an approved facility, (3) corrective action was necessary, (4) the event had been reported to the Natural Resources and Environmental Protection Cabinet, and (5) the costs were *370 reasonable and properly documented. See generally 415 Ky. Admin. Regs. 1:080 (2003). Timeliness in making a claim is one of the many requirements for reimbursement. Dairy Mart missed the filing deadline of October 13, 2001, imposed by Ky. Admin. Regs. 1:080 § 6(4)(a), when it filed 22 Fund reimbursement claims with the Office four days late. All of these claims sought reimbursement for corrective action done with respect to Dairy Mart’s underground storage tanks in Kentucky.
Dairy Mart contends these claims were timely filed despite the Kentucky regulation, because § 108 of the bankruptcy code, which is set forth in the margin,[1] automatically extends the filing deadline to 60 days after the filing date of a bankruptcy petition, in this case to November 23, 2001. This provision of the federal bankruptcy law affords a grace period regarding all regulatory deadlines for a debtor’s filing of a “proof of claim or loss” if such deadlines have not yet passed on the date the debtor files for bankruptcy. 11 U.S.C. § 108(b) (2000). Dairy Mart’s filing occurred well within this grace period.
During the application process, plaintiff drew defendants’ attention to the effect of this section of the bankruptcy code. The state officials, however, refused to accept Dairy Mart’s claims as being timely filed, indicating that § 108 did not bind the Fund. Their denial of the claims was communicated to plaintiff by a letter dated December 5, 2001, and through telephone conferences with Dairy Mart’s counsel.
On March 5, 2002 plaintiffs initiated an adversary proceeding in the bankruptcy court seeking a declaratory judgment with respect to the parties’ rights and obligations in connection with the grace period provided by § 108 of the bankruptcy code, and also requesting an injunction ordering defendants to accept Dairy Mart’s claims as timely filed, pursuant to 11 U.S.C. § 105(a). Defendants filed a motion to dismiss, arguing that sovereign immunity protected them from suit and that the bankruptcy court therefore lacked personal and subject matter jurisdiction over them. On June 12, 2002 the bankruptcy court denied the motion to dismiss. It reasoned that the Eleventh Amendment did not bar the suit because Dairy Mart sought prospective injunctive relief to end a continuing violation of federal law, thus falling within the Ex parte Young exception to the bar of sovereign immunity.
Defendants then appealed that decision to the United States District Court for the Southern District of New York, which has appellate jurisdiction over final judgments, orders, and decrees of federal bankruptcy courts in the Southern District, pursuant to 28 U.S.C. § 158(a)(1). In an order dated January 23, 2004, district court Judge Kimba Wood affirmed the order of the bankruptcy court, agreeing that the action was “best understood as one for ‘prospective injunctive relief.’ ” This appeal followed.
DISCUSSION
I Standard of Review
The single issue on appeal is whether the relief sought by Dairy Mart is essentially for the retroactive recovery of funds *371 from the Commonwealth of Kentucky and thus jurisdictionally barred by the doctrine of sovereign immunity, as derived from the Eleventh Amendment, which protects states from being sued in federal court. Both the bankruptcy court and the district court answered this question in the negative. We agree.
When a district court acts as an appellate court in an appeal from an order of the bankruptcy court, its determination is subject to plenary review. See Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 142 (2d Cir.1999). Exercising that kind of review, we independently examine the bankruptcy court’s factual determinations and legal conclusions, accepting the former unless clearly erroneous and reviewing the latter de novo. See Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.), 68 F.3d 26, 29 (2d Cir.1995). Whether a state is immune from suit under the Eleventh Amendment is a question of law reviewed de novo. See CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs., 306 F.3d 87, 94 (2d Cir.2002).
II A Doctrinal Summary of the Eleventh Amendment
The Eleventh Amendment to the United States Constitution states that “[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.” U.S. Const, amend. XI. For over a century, the Supreme Court has interpreted the Eleventh Amendment not as against a ta-bula rasa, but rather as a confirmation of the preexisting principle of sovereign immunity. See Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (“[W]e have reaffirmed that federal jurisdiction over suits against unconsenting States ‘was not contemplated by the Constitution when establishing the judicial power of the United States.’ ” (quoting Hans v. Louisiana, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890))).
The Eleventh Amendment protects un-consenting states from suits in federal court brought by citizens of other states, see U.S. Const. Amend. XI, and consistent with the Eleventh Amendment, the doctrine of sovereign immunity additionally protects unconsenting states from suits brought by its own citizens in its own state courts, see Hans, 134 U.S. at 18-19, 10 S.Ct. 504; Alden v. Maine, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). Thus, the Supreme Court has held that sovereign immunity, as an a priori concept, extends beyond the explicit language of the Eleventh Amendment. See, e.g., Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Hans, 134 U.S. at 15, 10 S.Ct. 504 (holding that the Eleventh Amendment protects a state from suit by its own citizens).
Even so, sovereign immunity is not absolute. In tension with the immunity of the states is the supremacy of the Union and its Constitution. Thus, the Supreme Court has in certain circumstances limited state sovereign immunity. Congress may, for example, abrogate a state’s sovereign immunity when it acts pursuant to § 5 of the Fourteenth Amendment. See Seminole Tribe, 517 U.S. at 59, 116 S.Ct. 1114. At issue here is the limited exception of Ex parte Young, in which the Supreme Court held that sovereign immunity did not bar actions seeking only prospective injunctive relief against state officials to prevent a continuing violation of federal law because a state does not have the power to shield its officials by granting them “immunity from responsibility to the supreme authority of the United States.” 209 U.S. at 160, *372 28 S.Ct. 441. The purpose of this exception is to “ensure that the doctrine of sovereign immunity remains meaningful, while also giving recognition to the need to prevent violations of federal law.” Idaho v. Coeur d’Alene Tribe, 521 U.S. 261, 269, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997).
Ill The Ex parte Young Exception to Sovereign Immunity
A. Ex parte Young
In the landmark case of Ex parte Young, the Supreme Court reviewed the jailing of the Minnesota Attorney General who had been enjoined by federal court from imposing what stockholders of a railroad believed were onerous rates on railroads in that state. The Supreme Court, echoing Chief Justice Marshall in Osborn, said that Young, as a state officer attempting to enforce an unconstitutional state statute, is subject to the consequences personally because he is stripped of his official representation. 209 U.S. at 159-60, 28 S.Ct. 441.
Inasmuch as we accept that the state is incapable of authorizing an unconstitutional act, the Ex parte Young exception is not a legal fiction, but rather involves the infliction of real damage by an officer, without authority by the state, upon the plaintiff. Although the state is comprised of people acting in their official capacity, one cannot confuse the state with the cast of the government, the current reflection of which may be marred by its composition. Put another way, although “[t]he people in their sovereign capacity may be immune from suit,” “it does not follow that [officers of the state] should share this aspect of sovereignty” when they violate the laws of the people. Orth, supra, at 135.
B. The Straightforward Inquiry
Whether a litigant’s claim falls under the Ex parte Young exception to the Eleventh Amendment’s bar against suing a state is a “straightforward inquiry” that asks “whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.” Verizon Md., Inc. v. Pub. Serv. Comm’n of Md., 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002). The Court has also identified other relevant considerations. In Seminole Tribe, 517 U.S. at 76, 116 S.Ct. 1114, for example, the Supreme Court has held that Ex parte Young is inapplicable where Congress has devised a comprehensive remedial scheme that prevents the federal courts from fashioning an appropriate equitable remedy. More recently, the Court concluded in Coeur d’Alene Tribe that the Ex parte Young fiction cannot be employed where certain sovereignty interests are present, as they are when the administration and ownership of state land is threatened. See 521 U.S. at 281, 287, 117 S.Ct. 2028. Neither of these special circumstances — a comprehensive remedial scheme that would preempt injunctive relief, nor strong governmental land interests — is present in this case.
Appellants question whether Dairy Mart successfully alleged that appellants have continually violated § 108 of the United States Bankruptcy Code. Moreover, defendants contend that the relief sought by Dairy Mart cannot be characterized as in-junctive relief because the relief sought ultimately results in an unlawful retroactive monetary liability against the state of Kentucky. We cannot adopt these contentions. Instead, in our view Ex parte Young authorizes jurisdiction over appellants. Our reasons follow.
1. Ongoing Violation of Federal Law
Under Ex parte Young, the state officer against whom a suit is brought “must have some connection with the en *373 forcement of the act” that is in continued violation of federal law. 209 U.S. at 154, 157, 28 S.Ct. 441. So long as there is such a connection, it is not necessary that the officer’s enforcement duties be noted in the act. See id.
Dairy Mart’s complaint alleges that Kentucky officials are in continued violation of federal law and thus clearly satisfies the straightforward inquiry test. See Verizon, 535 U.S. at 645, 122 S.Ct. 1753. According to the complaint, the officials refuse to give effect to § 108(b) of the bankruptcy code and to accept the claims of Dairy Mart as timely filed; and in so doing, they are in violation of Chapter 11 of the United States Bankruptcy Code, the purpose of which is to provide respite to the debtor so that it may rehabilitate its affairs. The officers’ significant responsibilities overseeing the Fund — including the approval of submitted claims — create the requisite connection to the illegal act. See Ex parte Young, 209 U.S. at 157, 28 S.Ct. 441; CSX Transp., Inc., 306 F.3d at 99 (holding that Ex parte Young permits jurisdiction over officials who have authority to control the assessments of railroad taxes that are in violation of federal law).
In the district court proceedings, appellants asserted there is no continuing violation of federal law for which they can be sued under Ex parte Young because the acts in question occurred in the past. In rejecting this characterization, we note that the instant case is very similar to that in Edelman, where the Supreme Court, under the Ex parte Young exception, granted a permanent injunction requiring compliance with federal time limits for paying disability benefits, which were wrongfully withheld. Edelman, 415 U.S. at 668, 94 S.Ct. 1347. Moreover, the defendants’ refusal to accept plaintiffs claims as timely filed is not a discrete past act because it is not final under Kentucky law. The relevant administrative regulations dictate that an aggrieved claimant may file for a formal administrative hearing for reconsideration by a hearing officer. Pursuant to this process, defendant McCloud must issue a “final order” concerning Fund reimbursement claims. 415 Ky. Admin. Regs. 1:120. In so doing, he may accept or reject the recommended order of the hearing officer. See Ky.Rev.Stat. Ann. § 13B.120(2). At the time Dairy Mart’s complaint was filed, Dairy Mart had appealed Nickel’s decision with the agency and, although McCloud had informally stated that the claims would not be accepted, Dairy Mart had yet to receive McCloud’s final refusal of the claims through the formal hearing process.
In moving for dismissal, defendants did not argue to the bankruptcy or district courts, nor do they contend on appeal, that Younger abstention precludes a federal court from entertaining plaintiffs request for equitable relief in light of ongoing state administrative proceedings. See Younger v. Harris, 401 U.S. 37, 43-44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Thus, we need not consider whether defendants have carried their burden to show a pending state proceeding concerning “the central sovereign functions of state government.” Philip Morris, Inc. v. Blumenthal, 123 F.3d 103, 105-06 (2d Cir.1997); see also Grieve v. Tamerin, 269 F.3d 149, 152-53 (2d Cir.2001). Rather, we deem the issue of Younger abstention to have been waived. See generally Brown v. Hotel & Rest. Employees & Bartenders Int’l Union, 468 U.S. 491, 500 n. 9, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984) (finding Younger abstention claim waived where state “d[idj not press” issue on appeal); McCune v. Frank, 521 F.2d 1152, 1158 n. 15 (2d Cir. 1975) (interpreting Supreme Court precedent as holding that Younger abstention may be waived).
*374 2. Question of Jurisdiction
Appellants attempt to distinguish Ex parte Young and its progeny by asserting that the prospective injunction Dairy Mart seeks is not to bar wrongful state activity, but to escape the consequences of having missed lawful regulatory deadlines in the underlying state administrative proceeding. We think this reasoning is circular; essentially, appellants declare the Ex parte Young exception that would allow for jurisdiction does not apply because the court has not yet found appellants’ actions illegal and cannot do so because it has no jurisdiction to decide that question.
We reach a contrary conclusion. The question of whether federal jurisdiction exists is not always free from doubt, and a federal court may have to examine and determine the facts and the law before concluding whether jurisdiction is appropriate. Thus, it follows that “a court has jurisdiction to determine its own jurisdiction.” United States v. United Mine Workers of Am., 330 U.S. 258, 292, 67 S.Ct. 677, 91 L.Ed. 884 (1947); see also Abortion Rights Mobilization, Inc. v. Baker (In re United States Catholic Conference), 824 F.2d 156, 162 (2d Cir.1987) (stating that even a court lacking subject matter jurisdiction may conduct appropriate proceedings, including the issuance of an injunction to preserve the status quo, to determine whether it has jurisdiction).
Necessarily, deciding whether a state official violated federal law “affects both the initial immunity inquiry as well as the ultimate decision on the merits.” 17A James Wm. Moore et al., Moore’s Federal Practice § 123.40[3][a] (3d ed.2004). At this stage, we need only determine whether Dairy Mart’s assertion that the appellants’ decision resulted in a violation of federal law is a substantial and not frivolous claim; we need not reach the legal merits of the claim. See id.; see also Lewis v. New Mexico Dep’t of Health, 261 F.3d 970, 976 (10th Cir.2001). Given the wide scope of § 108 of the bankruptcy code, it appears to encompass the claim processes of the Fund, thus superceding the filing deadline imposed by Kentucky law. See 415 Ky. Admin. Regs. 1:080 § 6(4)(a). Dairy Mart’s assertion that § 108 applies to the Fund’s decision is therefore neither insubstantial nor frivolous.
3. Prospective Injunctive Relief
Recognizing that the degree of a state’s interest implicated in a suit is related to the type of relief sought, the second aspect of the Ex parte Young exception affords jurisdictional grants to federal court only when a plaintiff seeks a prospective, injunctive remedy. The essential inquiry in an Eleventh Amendment challenge is whether the state, although not named in the action, is the real party in interest. See Edelman, 415 U.S. at 663, 94 S.Ct. 1347. A state may be the party with a substantiated interest when enforcement of the court’s decree would affect the state’s political or property rights. See Hopkins v. Clemson Agric. Coll, of S.C., 221 U.S. 636, 642, 31 S.Ct. 654, 55 L.Ed. 890 (1911). In order to safeguard such rights, sovereign immunity bars suits whose direct outcome will diminish the public fisc through the award of retroactive damages. See Ford Motor Co. v. Dep’t of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945) (“[Wjhen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit.”). Such suits involve compensatory or deterrence interests that are insufficient to overcome the compelling justifications for a state’s sovereign immunity. In contrast, suits for injunctive relief, the *375 prospective aim of which is to end a continuing violation of federal law, vindicate the overriding “federal interest in ensuring the supremacy of federal law.” Moore’s Federal Practice § 123.40[4] [b] [i].
Appellants insist that although the relief sought in Dairy Mart’s complaint is for declaratory and injunctive relief, compelling the state of Kentucky to accept their claims as timely filed ultimately leads to reimbursement from the state treasury. They insist the filing and the payment of the claim cannot be separated for the purpose of determining whether injunctive or monetary relief is sought. This proposition is logically flawed. A causation relationship does not create an identity relationship. Otherwise, as Dairy Mart points out, life would be equated with death, since the latter is an. inevitable consequence of the former.
We recognize that in many cases the difference between the type of relief barred by the Eleventh Amendment and that permitted under Ex parte Young is not as clear cut as the brightness of high noon and the darkness of midnight. See Edelman, 415 U.S. at 667, 94 S.Ct. 1347. The Supreme Court has given us guidance in navigating between these two extremes and has taught that sovereign immunity is not invoked simply because prospective in-junctive relief ultimately results in a diminution of state funds. In Edelman, a case both parties cite, the plaintiff sought declaratory and injunctive relief on the basis that state officers “were administering the federal-state programs of Aid to the Aged, Blind, or Disabled (AABD) in a manner inconsistent with various federal regulations and with the Fourteenth Amendment to the Constitution.” 415 U.S. at 653, 94 S.Ct. 1347. The district court granted a permanent injunction requiring compliance with the federal time limits for paying AABD benefits and also ordered the defendants to release benefits that were wrongfully withheld. See id. at 656, 94 S.Ct. 1347.
The Supreme Court reversed in part, holding that while the Ex parte Young doctrine allowed the portion of the judgment awarding injunctive relief, the district court erred in ordering the payment of wrongfully withheld funds. The Court observed that the monetary award, although under the guise of equitable restitution rather than damages, constituted retrospective relief that was barred by the Eleventh Amendment. Id. at 668, 94 S.Ct. 1347. The Court acknowledged that both forms of relief would eventually result in payment from the state treasury. But, it observed, this “ancillary effect” of the in-junctive relief was “a permissible and often an inevitable consequence” of the Ex parte Young doctrine. Id.
IV Resolution of Present Case
We hold that Dairy Mart’s adversary action is akin to the injunctive relief compelling compliance with federal timing requirements that was approved in Edel-man, as opposed to the retrospective relief that the Supreme Court barred. Dairy Mart seeks prospective injunctive relief compelling appellants to accept its claims as timely filed. To be sure, the ultimate purpose behind the action is to commence a process that Dairy Mart hopes will allow it to recover funds from the state treasury. Nonetheless, we follow the rationale of the Edelman court and approve this form of injunctive relief. If eventual payment is made to Dairy Mart as an outcome of the injunction, such a depletion from the state treasury is a permissible ancillary effect of Ex parte Young because it is the “necessary result of compliance with decrees which by their terms were prospective in nature.” Id. at 668, 94 S.Ct. 1347.
*376 Moreover, the injunction does not directly lead to the payment of state funds from the treasury because the Fund will still make the final decision determining whether Dairy Mart meets the numerous other filing requirements imposed by Kentucky law. Thus, whether reimbursement is ultimately appropriate, the injunctive relief sought in this case falls on the Ex parte Young side of the Eleventh Amendment, rather than on the Edelman side because “whether or not [the claimant] will receive retroactive benefits rests entirely with the State, ... not with the federal court.” Quern v. Jordan, 440 U.S. 332, 348, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (holding that sovereign immunity did not bar an order forcing the Edelman defendants to send a notice to plaintiffs advising them that state administrative procedures were available by which they could obtain past welfare benefits).
Appellants dispute that the eventual payment of state funds may be characterized as a permissible ancillary effect on the treasury via a legitimate prospective injunction. Instead, the state officials maintain that Dairy Mart’s objective is to institute a process that will lead to a retroactive monetary recovery. We respond by first noting that defendants misstate the duty of an appellate court reviewing a motion to dismiss for lack of jurisdiction. We do not simply accept the allegations of the complaint but must construe those allegations favorably when passing on a motion to dismiss for lack of jurisdiction. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In any ease, we certainly need not accept the defendant’s recharacterization of the plaintiffs suit when, as here, the relief sought does not rest upon a disingenious allegation of a continuing federal law violation.
We further acknowledge that although our decision may ultimately impact the state treasury, the financial effect is not the same as it is when a court orders retroactive payments. See Edelman, 415 U.S. at 666 n. 11, 94 S.Ct. 1347 (rejecting dissent’s view that “ ‘[wjhether the decree is prospective only or requires payments for the weeks or months wrongfully skipped over by the state officials, the nature of the impact on the state treasury is precisely the same’ ”). As stated, other impediments to Dairy Mart’s receipt of reimbursement for its cleanup costs exist, aside from the filing deadline. In contrast, when a federal court orders retroactive payments to correct delays, it necessarily means less money is available for payments for the state’s other obligations. See id. When a slice of pie is taken out, there is less for others.
Finally, Dairy Mart’s complaint seeks a declaratory judgment regarding the parties’ rights and obligations with respect to the extension of time provided by § 108 of the bankruptcy code. While this asks the Court to declare the state officials’ past and future actions illegal, that relief does not impose a past liability on the state. See Verizon, 535 U.S. at 646, 122 S.Ct. 1753. Although the payment of funds to Dairy Mart resulting from injunctive or declaratory relief may indeed compensate Dairy Mart for past wrongs committed by state officers, the Supremacy Clause demands that any rights of Dairy Mart under the bankruptcy code must be equitably met, and the payment is simply an ancillary effect of a properly issued injunction.
CONCLUSION
In sum, Dairy Mart has successfully alleged that the refusal of the Kentucky state officials to accept Dairy Mart’s claims as timely filed, and their failure to correct this decision, is a violation of § 108 of the United States Bankruptcy Code. Dairy Mart has alleged a violation of fed *377 eral law, and its entitlement to injunctive relief preventing such a violation is not tantamount to monetary reimbursement from the state. Accordingly, the Ex parte Young exception to sovereign immunity applies and the district court properly affirmed the bankruptcy court’s denial of appellee’s motion to dismiss for lack of personal and subject matter jurisdiction. To rule otherwise would usurp the constitutional authority granted the federal government over bankruptcy matters.
Order affirmed.

. Section 108(b) of Title 11 of the United States Code provides in relevant part as follows:
if applicable nonbankruptcy law, ... fixes a period within which the debtor ... may file any pleading, demand, notice, or proof of claim or loss, ... and such period has not expired before the date of the filing of the petition, the trustee may ... file, cure, or perform, as the case may be, ... 60 days after the order for relief.
11 U.S.C. § 108(b)(2) (2000).